1 | Ira M. Siegel, SBN 78142
email:  irasiegel@earthlink.net
2 | LAW OFFICES OF IRA M. SIEGEL
433 N. Camden Drive, Suite 970
3 | Beverly Hills, California 90210-4426
Tel:   310-435-7656
4 | Fax:   310-675-2187

5 | Attorney for Defendant
White Castle Management Co.
6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10 | **WESTERN DIVISION**

11 | JIBJAB MEDIA, INC.,                    CASE NO. CV 12-04178 MMM (JEMx)

12 |                    Plaintiff          DEFENDANT'S MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
13 |      v.                               SUPPORT OF DEFENDANT'S
                                            MOTION TO DISMISS FOR LACK OF
14 | WHITE CASTLE MANAGEMENT               PERSONAL JURISDICTION
CO. and DOES 1-10,                      (FED.R.CIV.P. 12(B)(2)), OR, IN THE
15 |                                       ALTERNATIVE, FOR ORDER
                    Defendant.            TRANSFERRING CASE TO THE
16 |                                       SOUTHERN DISTRICT OF OHIO,

17 |                                       Hearing Date:   November 5, 2012
                                            Time:           10:00 a.m.
18 |                                       Courtroom:      780 (Roybal Building)
                                            Judge:    Hon. Margaret M. Morrow
19

20

21

22

23

24

25

26

27

28

CV 12-04178 MMM (JEMx)                                          Defendant's Memorandum in Support of Motion to
                                                                  Dismiss for Lack of Personal Jurisdiction

1
2

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................ 1

II.   SUMMARY OF THE ARGUMENT ............................................... 3

III.  THE BASIS UPON WHICH JIBJAB ASSERTS PERSONAL
      JURISDICTION ............................................................................. 3

      ARGUMENT ................................................................................. 4

IV.   JIBJAB'S COMPLAINT MUST BE DISMISSED PURSUANT
      TO FED.R.CIV.P. 12(b)(2) FOR LACK OF PERSONAL
      JURISDICTION ............................................................................. 4

      A.    Personal Jurisdiction ........................................................... 5

      B.    The Legal Standard for General Jurisdiction ...................... 6

      C.    Specific Jurisdiction ......................................................... 12

V.    JIBJAB'S ANTICIPATED ARGUMENTS ................................. 18

      A.    Defendant Did Not Target People In California ................ 19

      B.    There Is No Evidence That People From California
            Posted Comments About The Promotion On Defendant's
            Facebook Page, And The Contention, Even If True, Fails
            To Support Jurisdiction ..................................................... 20

      C.    The Defendant Does Not Sell Frozen Food In California ... 20

      D.    Licensing Deals with Southern California Companies ...... 21

      E.    Californians Who Are Originally From the Midwest and
            East Have Vivid Recollections of White Castle ............... 22

VI.   CONCLUSION .............................................................................. 23

1

2

## TABLE OF CASES

3  Amoco Egypt Oil Co. v. Leonis Nav. Co., 1 F.3d 848 (9th Cir. 1993) .................. 7

4  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ........................................................... 4

5  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082 (9th
6  Cir. 2000) ........................................................................................................ 6, 7

7  Bauman v. Daimlerchrysler Corp., 644 F.3d 909 (9th Cir. 2011) ........................ 12

8  Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ....................................... 6

9  Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997) ..................... 14, 15

10  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280 (9th Cir.
11  1977) ................................................................................................................ 5

12  Fiore v. Walden, 08-17558 (9th Cir. 8-8-2012) ................................................... 4

13  HealthMarkets, Inc. v. Superior Court, 171 Cal. App. 4th 1160 (Cal.
14  App. 2d Dist. 2009) ..................................................................................... 20, 21

15  Helicopteros Nacionales v. Hall, 466 U.S. 408 (1984) ....................................... 7

16  Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d
17  450 (9th Cir. 2007) ........................................................................................... 16

18  International Shoe Co. v. Washington, 326 U.S. 310 (1945) ............................... 5

19  King v. Am. Family Mut. Ins. Co., 632 F.3d 570 (9th Cir. 2011) ....................... 7
20
21  Lake v. Lake, 817 F.2d 1416 (9th Cir. 1987) ..................................................... 13

22  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218 (9th Cir. 2011) ..... 4-12, 20

23  Nubonau, Inc. v. NB Labs, Ltd., 2012 WL 843503 (S.D. Cal.) ................ 15-18, 21

24  Pebble Beach Co. v. Caddy, 453 F.3d 1151, (9th Cir. 2006) ........................ 14, 18

25  Perkins v. Benguet Consol Mining Co., 342 U.S. 437 (1952) ............................ 8

26  Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007) ..................................... 4, 5

27  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir.) .................. 13

28

Terracom v. Valley Nat. Bank, 49 F.3d 555 (9th Cir. 1995) .................................... 5

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) ................. 6, 18

Yahoo! Inc. v. La Ligue Contre Le Racisme, 433 F.3d 1199 (9th Cir. 2006) ...................................................................................................... 13

1

# TABLE OF STATUTES AND RULES

2    Federal Rules of Civil Procedure 12(b)(2) ........................................................ 2, 4

3    Cal. Civ. Proc. Code § 410.10.......................................................................... 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.   INTRODUCTION

White Castle Management Co. ("WC Management Co."), the only named and served defendant in this action, is a Delaware corporation headquartered in Columbus, Ohio.  See the Declaration of Kim Kelly-Bartley ("Kelly-Bartley Dec."), at ¶ 3.  It has no facilities or employees in California, is not registered to do business in California, has never paid taxes in California, and does not have an agent for service of process in California.  *Id.* at ¶ 2.  While WC Management Co. owns and operates a website that is accessible from California, that website is not used to advertise or sell any goods of WC Management Co.  *Id.* at ¶ 5.

WC Management Co. is a subsidiary of White Castle System, Inc. ("WC System") *Id.* at ¶ 3.  WC System is a separate legal entity from WC Management Co., and is not a party to this action.  WC System, also a Delaware corporation with headquarters in Columbus, Ohio, operates a regional chain of fast food restaurants in the Midwestern United States and the New York City metropolitan area. *Id.* at ¶¶ 3-4.  Specifically, WC System operates restaurants in the following states:  Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, Tennessee and Wisconsin.  *Id.* at ¶ 4  Like WC Management Co., WC System has no facilities or employees in California, is not registered to do business in California, and has never paid taxes in California. *Id.* at ¶ 3  All of the restaurants operated by WC System are far outside of California: the nearest of these restaurants being over 1,000 miles from the State of California.

The present dispute revolves around a social media ad campaign that promoted the retail restaurants operated by WC System, Inc., not by the Defendant. The complained of actions to which the Complaint is directed relate to the content of a single Facebook posting of WC Management Co. (Complaint, Exhibit D) and a link to that Facebook posting in a "Tweet" from WC Management Co.'s Twitter account.  (Complaint, Exhibit F)   The Facebook posting at issue promoted a single food product, namely Chicken Rings, which is available only at the retail restaurants operated by WC System, a non-party to this action, in Illinois, Indiana, Kentucky, Michigan, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, Tennessee and Wisconsin. *Id.* at ¶ 9  While the Facebook and Twitter postings were available to California residents over the Internet, they were not in any way especially directed to or targeted to California residents. *Id.*  The key words set up in the Facebook profile for this campaign were not chosen to focus on either California or the Plaintiff, and were not terms that were unique to either California or the Plaintiff. *Id.* Indeed, the Chicken Rings promoted by the posting at issue were not available in California, and were not available at any geographic location within a thousand miles of California. *Id.* at ¶ 12.

For the reasons set forth in greater detail below, this Court lacks personal jurisdiction over WC Management Co., and the Complaint in this action should be dismissed in its entirety pursuant to Rule 12 (b)(2), Fed. R. Civ. Proc.

Alternatively, the Court should transfer this action to the United States District Court for the Southern District of Ohio.

II.   SUMMARY OF THE ARGUMENT

In its Complaint, Plaintiff failed to set forth even a bare bones assertion of WC Management Co.'s contacts with California sufficient to satisfy Plaintiff's pleading burden with respect to personal jurisdiction.  With respect to the "Does 1-100" in the Complaint, Plaintiff has not even asserted any claim against them.   For these reasons alone, Plaintiff's Complaint should be dismissed in its entirety.

Furthermore, WC Management Co. is not subject to personal jurisdiction in the state of California.  WC Management Co.'s contacts with the state of California do not even remotely represent "continuous and systematic general business contacts [which] approximate physical presence in the forum state."  And WC Management Co.'s contacts with the forum do not in any way give rise to the cause of actions (trademark infringement and unfair competition) asserted in the Complaint.  Thus, WC Management Co.'s Motion to Dismiss pursuant to Rule 12(b)(2) should be granted.

III.   THE BASIS UPON WHICH JIBJAB ASSERTS PERSONAL JURISDICTION

The Complaint in this action makes only a single conclusory statement regarding personal jurisdiction over WC Management Co.:

"On information and belief, Defendant is a corporation subject to personal jurisdiction in and, therefore, resides in this judicial district" Complaint at ¶ 11.

## ARGUMENT

IV.   JIBJAB'S COMPLAINT MUST BE DISMISSED PURSUANT TO FED.R.CIV.P. 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

Federal Rule of Civil Procedure 12(b) states that "a party may assert the following defenses by motion: ... (2) lack of personal jurisdiction." Fed. R. Civ. P. 12 (b)(2).  When, as in the present case, a motion to dismiss for lack of personal jurisdiction is filed, the plaintiff then has the burden of demonstrating that jurisdiction is proper.  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

At this stage of the litigation, Plaintiff must make a prima facie showing of personal jurisdiction in order to survive a Rule 12(b)(2) motion to dismiss.  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  In considering the issue, the court should "draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility."  *Fiore v. Walden,* 08-17558 (9th Cir. 8-8-2012).  On the other hand, the court should not draw "unreasonable or far-fetched inferences in favor of the plaintiff."  *Id.*  See also, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  And, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported

1    by specific factual allegations will not satisfy a plaintiff's pleading burden."

2    *Swartz v. KPMG LLP*, 476 F.3d at 766.

3

4           Plaintiff merely stated in its Complaint, with no allegation of facts to support

5    its conclusion,  that "on information and belief," the Defendant is subject to

6    personal jurisdiction in the forum.  On this basis alone, Plaintiff's complaint should

7    be dismissed.  And given the fact that Plaintiff has failed to make even a colorable

8    showing of personal jurisdiction, the Court need not permit even limited discovery

9    directed to the question of personal jurisdiction.  *Terracom v. Valley Nat. Bank*, 49

10   F.3d 555, 562 (9th Cir. 1995).

11

12           A.    <u>Personal Jurisdiction</u>

13           For personal jurisdiction over a non-resident to exist, it must be found under

14   the forum state's long-arm statute, and must comport with the constitutional

15   principles of due process.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d

16   1280, 1280 (9th Cir. 1977).

17

18           "California's long-arm statute, Cal.Civ.Proc. Code § 410.10, is coextensive

19   with federal due process requirements, so the jurisdictional analyses under state

20   law and federal due process are the same."  *Mavrix*, 647 F.3d at 1223.  Federal due

21

22   process requires that a non-resident defendant "must have certain minimal contacts

23   with [the forum state] such that the maintenance of the suit does not offend

24   'traditional notions of fair play and substantial justice'."  *International Shoe Co. v.*

25

26   *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting Milliken v. Meyer,

27

28

311 U. S. 457, 463, 61 S. Ct. 339 (1940)).  In order to find such minimal contacts, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78, 105 S.Ct. 2174 (1985) (quoting *Hanson v. Denckla*, 357 U. S. 235, 253 (1958)).  The defendant's "conduct and connection with the forum State' must be such that the defendant "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

A court can exercise personal jurisdiction over a non-resident defendant only if it has either general or specific jurisdiction.  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  If general jurisdiction exists, a court has personal jurisdiction over the defendant for any cause of action, even an action unrelated to the defendant's contacts with the forum state.  If a defendant is not subject to general jurisdiction, a court has personal jurisdiction only if the action arises from the defendant's contacts with the forum state.  *Id.*

B.   The Legal Standard for General Jurisdiction

"The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world'."  *Mavrix*, 647 F.3d at 1224 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374

F.3d 797, 801 (9th Cir. 2004)).  Thus, a showing that a defendant merely has business contacts with the forum is insufficient. *Bancroft & Masters*, 223 F.3d at 1086.  Instead, the defendant's activities in the forum state must be so extensive that it has become a de facto resident of the state.  The plaintiff must show that the defendant's activities transcend merely doing business "with" the forum state and are so extensive that it is fair to say that the defendant is actually doing business "in" the forum state. *Id.*; see also *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 418 (1984).  Due to this exacting standard, the Ninth Circuit has regularly declined to find general jurisdiction—even where a defendant's contacts with the forum state were far more extensive than the contacts between the present Defendant and California. See A*moco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 851 n. 3 (9th Cir. 1993); see also *Mavrix*, 647 F.3d at 1224-25 (discussing Supreme Court cases involving general jurisdiction).

General jurisdiction requires not only that the non-resident defendant engage in "continuous and systematic general business contacts," but also that those "continuous and systematic general business contacts" "approximate physical presence' in the forum state." *Mavrix*, 647 F.3d at 1223-24.  The defendant must have "continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *King v. Am.*

*Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)(quoting *International Shoe*, 326 U.S. at 318).

The Ninth Circuit recently noted, '[t]o determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their '[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets'." *Mavrix*, 647 F.3d at 1224, quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).   The standard for general jurisdiction is very high, since it allows a defendant to be haled into court in the forum state for claims arising anywhere in the world. *Id.* "In fact, the Supreme Court has found general personal jurisdiction over a nonresident defendant in only one case." *Id.* (that case was *Perkins v. Benguet Consol Mining Co.*, 342 U.S. 437, 72 S. Ct. 413 (1952)).

In the present case, JibJab is expected to argue that WC Management Co. is subject to jurisdiction in California because it allowed a third party who is not a defendant in this lawsuit – here one of WC Management Co.'s sister companies, WC Food Products LLC – to advertise on WC Management Co.'s website.  A similar argument, but one based upon far more extensive contacts with California, was unequivocally rejected by the Ninth Circuit in *Mavrix*.

In *Mavrix*, the Ninth Circuit held that there was no general personal jurisdiction over the defendant Brand Technologies.  The plaintiff in *Mavrix* argued that the defendant, Brand, was subject to general jurisdiction in the state of

California because Brand "allows third parties to advertise jobs, hotels, and vacations in California on its website; sells, or allows a third-party vendor to sell, tickets to California events on its website; employs a California firm to design its website; has business relationships with a California-based national news organization, an Internet advertising agency, and a wireless provider; and maintains a 'highly interactive' website." *Mavrix*, 647 F.3d at 1225.  Some of those third-party advertisements were even directed to California residents, resulting in a substantial number of California residents visiting Brand's website. *Id.*  Despite these numerous connections with the state of California, the Ninth Circuit held that these contacts "fall well short of the requisite showing for general jurisdiction." *Id.* at 1225.

The court in *Mavrix* noted that "Brand has no offices or staff in California, is not registered to do business in the state, has no registered agent for service of process, and pays no state taxes." *Id.*  The court went on to state that while "[e]vidence that a nonresident defendant advertises in a forum is significant for general jurisdiction when the defendant markets its own product by targeting forum residents,..[it] has less significance for general jurisdiction when other entities use the defendant's publication to promote their own businesses." *Id.* at 1225-26.  The court went on to characterize Brand's activities as "doing business with California," rather than "doing business in California." *Id.* at 1226.  Doing

business "with" the state of California is not sufficient to establish general jurisdiction.  *Id.*

Quite unlike WC Management Co.'s website, Brand's website was "highly interactive."  The court nevertheless found this activity to be inadequate to confer general jurisdiction, holding that providing Brand's highly interactive website did not "signal a nonresident defendant's intent to 'sit down and make itself at home' in the forum by cultivating deep, persistent ties with forum residents."  *Id.* at 1227, quoting *Tuazon*, 433 F.3d at 1169.

In today's world of interactive websites and business use of social media, to allow general jurisdiction based on the fact that forum residents could access a foreign company's interactive website or social media postings would expose nearly every business to nationwide general jurisdiction.  Such a result "would be inconsistent with the constitutional requirement that 'the continuous corporate operations within a state' be 'so substantial and of such a nature as to justify suit against [the nonresident defendant] on causes of action arising from dealings entirely distinct from those activities."  *Mavrix*, 647 F.3d at 1227, quoting International Shoe, 326 U.S. at 318.

In the present case, WC Management Co.'s contacts with the state of California are even less than those of Brand in the Mavrix case—contacts which the Ninth Circuit held "fall well short of the requisite showing for general jurisdiction."  *Id.* at 1225.  WC Management Co. is incorporated in Delaware, is

1   headquartered in Columbus, Ohio, has no facilities or employees in California, is

2   not registered to do business in California, has no registered agent for service of

3   process in California, and has paid no California state taxes.

4   

5       WC Management Co. has an Internet website of minimal interactivity, and

6   periodically posts content to Facebook and sends out "Tweets" using the Twitter

7   social media platform.  This online marketing activity, however, is not used to

8   promote any goods or services of WC Management Co.  Instead, WC Management

9   Co.'s online marketing activities promote (1) the restaurants of its parent, WC

10  System, Inc., none of which are within or even remotely close to the state of

11  California; and (2) food products of its sister company, WC Food Products LLC,

12  some of which WC Food Products LLC (not WC Management Co.) sells to

13  distributors in California.  However, the contacts between WC Food Products

14  LLC, a separate and distinct entity, and the state of California are not attributable

15  to WC Management Co.  See, e.g., *HealthMarkets, Inc. v. Superior Court*, 171 Cal.

16  App. 4th 1160 (Cal. App. 2d Dist. 2009).

17      In sum, even when considered collectively, WC Management Co.'s contacts

18  with the state of California do not even remotely represent "continuous and

19  systematic general business contacts [which] approximate physical presence in the

20  forum state." *Mavrix*, 647 F.3d at 1223-24.  Thus, WC Management Co. is clearly

21  not subject to general personal jurisdiction in the state of California.

1
2
3
4
5
6
7
8
9
10
11
12

    In its Complaint, the Plaintiff stated that "[o]n information and belief, Defendant is a corporation subject to personal jurisdiction in and, therefore, resides in this judicial district."  Complaint at ¶ 11.  As this is the only statement in the Complaint regarding WC Management Co.'s being subject to personal jurisdiction in the state of California, Plaintiff clearly has only alleged that WC Management Co. is subject to general personal jurisdiction in California.  For this reason, there is no need for the court to even look to specific jurisdiction.  Nevertheless, WC Management Co. is also not subject to specific personal jurisdiction, as discussed below.

13
14

    C.    Specific Jurisdiction

15
16
17
18
19
20
21
22
23
24
25

    Even where general jurisdiction is not found, a court may exercise specific jurisdiction in certain instances.  However, "[s]pecific jurisdiction is only relevant if the defendant's 'contacts with the forum give rise to the cause of action before the court'."  *Bauman v. Daimlerchrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011), quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (per curiam).  Here, WC Management Co. 's *de minimis*, indirect (at best) contacts with the state of California have no relationship to Plaintiff's claims of trademark infringement and unfair competition.

26
27
28

    Specific jurisdiction may only be found where: (1) the nonresident defendant has purposefully directed activities or consummated a transaction with the forum

or resident thereof; or performed some act by which the nonresident defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claims arise out of or relate to the nonresident defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice (i.e., is reasonable). *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The Plaintiff has the burden of proving the first two prongs of this test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

While the first prong of the test for specific jurisdiction includes both "purposeful direction" and "purposeful availment," a purposeful direction analysis is generally used in cases alleging tortuous conduct. *Id.* "Purposeful direction" requires that the alleged tortuous conduct is purposefully directed at California based on an "effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)(*en banc*). To meet this "effects test," the plaintiff must show that the defendant (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) causing harm which the defendant knows is likely to be suffered in the forum state. *Schwarzenegger* at 803. With respect to the third prong of the "effects test," the Ninth Circuit has cautioned that "something more" than a mere foreseeable effect in the forum state in order to establish specific personal jurisdiction. *Pebble*

*Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).   The allegedly tortuous acts themselves must be expressly aimed at the forum state.   *Id.*

The first prong of the "effects test" - that the defendant committed an intentional act - is, for purposes of its Motion to Dismiss, not disputed by WC Management Co.

Not surprisingly, the issue of whether or not acts committed online are "expressly aimed at the forum state" has come up quite frequently in recent years - particularly in cases alleging trademark and copyright infringement.   Internet websites and social media platforms such as Facebook and Twitter are accessible globally.   However, courts have routinely held that the mere fact that the alleged tortious conduct occurred online at a website which was accessible in the forum state is not enough to establish that the conduct was expressly aimed at the forum state.   *See, e.g., Pebble Beach*, 453 F.3d at 1157-58 (foreign defendant's alleged trademark infringement on a largely passive website does not satisfy the "something more" required to show express aiming at the forum state).   "Internet advertisement alone is [not] sufficient to subject the advertiser to jurisdiction in the plaintiff's home state."   *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).   There must be "something more" which indicates that the defendant "purposefully (albeit electronically) directed his activity in a substantial way to the forum state."   *Id.*

In determining if there is "something more" which arises out of the defendant's online activities, courts typically examine "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Cybersell*, at 418. "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 419 (quotation omitted). However, mere online advertising is not sufficient to subject the advertiser to specific personal jurisdiction in the plaintiff's home state. *Id.* at 418. As the court in *Cybersell* noted, if it were to find specific jurisdiction solely because the plaintiff has alleged trademark infringement over the Internet, "every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is located. That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state." *Id.* at 420.

The recent decision in *Nubonau, Inc. v. NB Labs, Ltd.*, 2012 WL 843503 (S.D. Cal.) is instructive as to the types of activities which rise to the level of "something more." In *Nubonau*, the plaintiff sued three separate entities for trademark infringement. Two of the defendants sold the allegedly infringing product, and the other was the foreign manufacturer. 2012 WL 843503. For each defendant, the court found no specific personal jurisdiction.

One of the retailers (Dotcom Retail) in *Nubonau* operated an interactive website that consumers could visit to purchase products. *Id.* at *4. The allegedly infringing products were sold by Dotcom Retail online, via this website. *Id.* at *8 ("Dotcom Retail and Cult Beauty, who simply sell NUBO products online.") In fact, two of plaintiff's investigators in California purchased the infringing product. *Id.* Dotcom Retail sold over 400 other products to customers in California, amounting to $40,000 in sales. *Id.* Dotcom Retail also engaged in targeted advertising through Google, and that advertising resulted in over 4,000 visits to its website from California residents. *Id.* at *5. Dotcom Retail also advertised via Facebook and Twitter. *Id.* at *6.

Despite all of this, the court found there was no specific jurisdiction over Dotcom Retail. In addition to the fact that the sales of infringing product in California were minimal (and instigated by the plaintiff), the court also held that the sale of other, non-infringing products in California was not relevant. As the court stated, "[s]pecific jurisdiction is 'tethered to a relationship between the forum and the claim', not simply the forum and the defendant." *Id.* at *5, *quoting Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). With respect to the targeted Google ads, the court held that these were "akin, in the Court's judgment, to ads in national publications that simply happen to make their way into California, and courts have consistently held this not to constitute 'purposeful direction'." *Nubonau*, 2012 WL 843503 at *6. "[A]n

internet advertisement that happens to pop up in a forum state isn't necessarily purposefully directed there."  *Id.* at *6, fn 7.

In the present case, WC Management Co. sells no products, online or otherwise.  Neither its website nor its Facebook and Twitter postings are expressly aimed at California.  At best, a small portion of its online activities include advertising the products of its sister company, WC Food Products LLC.  Some of these products are sold to distributors in California.  However, WC Management Co. has no involvement with those sales.  This is the extent of WC Management Co.'s activities which have even any remote relationship to the state of California.  Clearly, this does not evince any activity which is expressly aimed at California.  There is no "something more."

In addition, even if WC Management Co.'s online activities related to the frozen foods sold by its sister company were, for the sake of argument, expressly aimed at California, these activities are wholly unrelated to Plaintiff's claims for trademark infringement and unfair competition.  Those claims arise from a video which was briefly posted to WC Management Co.'s Facebook page, and linked to from its Twitter account.  But that video promoted a product of Defendant's parent company, WC System, Inc.  More importantly, that product, Chicken Rings, is only available in the parent's restaurants - all of which are over 1,000 miles from the state of California.  Clearly, Defendant did not expressly aim the activities

Plaintiff complains about at the state of California.  There would be no reason to do so.

Furthermore, the mere foreseeability that a California resident may access defendant's Facebook page and view the promotion, or foreseeability that the posting might cause harm to a third-party located in California is not sufficient to establish personal jurisdiction.  W*orld-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*  "Just because a foreign act has foreseeable effects in a forum state does not mean specific jurisdiction there is appropriate." *Nubonau*, 2012 WL 843503 at *6.  Likewise, whether or not the Defendant knew or should have known that the Plaintiff's principal place of business is in California is insufficient to establish express aiming.  *Pebble Beach*, 453 F.3d at 1157.

V     JIBJAB'S ANTICIPATED ARGUMENTS

Based upon the contentions of Plaintiff at the meet and confer for this motion on August 9, 2012, Defendant anticipates JibJab might make the following arguments in support of personal jurisdiction: (1) that Defendant "targeted people in California with ad impressions on their Facebook pages;" (2) people from California posted comments about the promotion on Defendant's Facebook page;

(3) Defendant sells frozen food in Southern California; and (4) Defendant may have licensing deals with Southern California companies; (5) products with White Castle logos have been sold in Southern California; and (6) Californians who are originally from the Midwest and East have vivid recollections of White Castle. As detailed below, each of these contentions fails to establish personal jurisdiction of Defendant in this action.

A.    Defendant Did Not Target People In California

Not only is this contention untrue, it is illogical. As noted above, the promotion in question was for a product sold only in stores that are geographically remote from the California market – by at least one thousand miles. There simply was no logical business reason for Defendant to target California residents with this (or any other) promotion. JibJab's contention is baseless.

JibJab has contended that Exhibit G to the Complaint supports this contention. Exhibit G, apparently a Facebook page of Greg Spiridellis, one of JibJab's co-founders, is totally lacking in probative value in this regard. While the promotion seemingly did appear as a sponsored ad on Mr. Spiridellis's Facebook page, its presence was triggered by something other than Defendant's targeting of California residents. *Kelly-Bartley Dec.*, ¶ 9. Far more likely, the promotion made its way to Facebook page due to specialized settings on Mr. Spiridellis's Facebook account to capture any ads referencing "JibJab."  In any event, the contention that Defendant targeted California is factually unsupported, and untrue.

B. <u>There Is No Evidence That People From California Posted Comments About The Promotion On Defendant's Facebook Page, And The Contention, Even If True, Fails To Support Jurisdiction</u>

Plaintiff's contention that people from California posted comments on Defendant's Facebook page is both unsupported, and irrelevant. Even if Plaintiff's contention is assumed to be factually accurate, it fails to support personal jurisdiction without more – much much more.  It was, and is, theoretically possible to post comments on Defendant's Facebook page from any place in the world that has an Internet connection, including California. Even if assumed, such an occurrence, falls far short of the requisite showing for jurisdiction.  Mavrix, 647 F.3d at 1225.  At the very most, such an occurrence might be argued as evidence that Defendant was doing business "with" California, not "in" California. Id.

C. <u>The Defendant Does Not Sell Frozen Food In California</u>

At the meet and confer conference, JibJab relied upon alleged sales in California of White Castle branded frozen foods.  While it is true that White Castle frozen food products are sold in California, those sales are not by Defendant, but rather by a distinctly different legal entity, WC Food Products LLC.  The law in California is clear, however: ownership of a subsidiary does not subject a non-resident parent company to specific personal jurisdiction based upon the subsidiary's contacts with the forum state.  *HealthMarkets, Inc. v. Superior Court*, 171 Cal. App.4[th] 1160, 1168-70 (Cal. Ct. App. 2009).  The logic of *HealthMarket* applies with even greater force here: WC Food Products LLC is sister company,

which is one step further removed from the Defendant.  Furthermore, these sales of

frozen food  have nothing to do with the complained of activities of Defendant in

the action, and represent an entirely matter, and have no impact on specific

jurisdiction. Nubonau, 2012 WL 843503 at *4.

       D.      <u>Licensing Deals with Southern California Companies</u>

       JibJab has represented to Defendant its belief that Defendant is subject to

personal jurisdiction because of licensing arrangements between Defendant and

companies in Southern California, and because of merchandising licenses for

White Castle-logo products.  While Plaintiff may be correct in guessing that such

licensing arrangements exist, it is entirely incorrect in suggesting that these

licensing arrangements are so extensive that Defendant should be considered a de

facto resident of California for purposes of personal jurisdiction.  Defendant has

but a single current trademark and merchandising licensing agreement with a

California-based company for t-shirts (and one former licensee), and only three

licensing agreements with movie studios/broadcasters.  Kelly-Bartley Dec., ¶ 2.

Defendant's primary interest in its licensing agreements is to expose its trademarks

for the purpose of promoting its restaurants—not to generate independent revenue.

*Id.*  Since the restaurants of White Castle System, Inc. do not operate in California,

the amount of California-based revenue from these licensing agreements is, as

expected, quite minimal – less than $10,000 during the past 3 years.  *Id.*  To

contend that these sporadic and commercially-insignificant licensing arrangements

with California companies is tantamount to having a physical presence in California is, at best, disingenuous.

E.     Californians Who Are Originally From the Midwest and East Have Vivid Recollections of White Castle

Finally, JibJab contended at the meet and confer conference that it can establish personal jurisdiction over Defendant in California because there are many Californians who are originally from the Midwest or East who have vivid recollections of White Castle.  While Defendant hopes JibJab's contention is true, and that these vivid recollections are positive, they are totally irrelevant to the question of personal jurisdiction.  Defendant simply is unaware of any legal authority holding that a party's fame in a remote geographical area outside the forum state, no matter how great, subjects that party to jurisdiction in the forum state.

//

//

//

//

VI.     <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Dismiss for Lack of Jurisdiction should be granted.

For the Court's information, that activities complained of by Plaintiff ceased months ago.  For purposes of judicial economy, Defendant is willing to accept a transfer of this case to the Southern District of Ohio if Plaintiff would still desire to pursue this matter.

Respectfully submitted,

Date:  August 17, 2012

Ira M. Siegel, SBN 78142
email:  irasiegel@earthlink.net
LAW OFFICES OF IRA M. SIEGEL
433 N. Camden Drive, Suite 970
Beverly Hills, California 90210-4426
Tel:   310-435-7656
Fax:   310-675-2187

Attorney for Defendant
White Castle Management Co.