1  ERIC W. HAGEN (SBN 192340)
   ehagen@mwe.com
2  ERIC LEVINRAD (SBN 169025)
   elevinrad@mwe.com
3  McDERMOTT WILL & EMERY LLP
   2049 Century Park East
4  Suite 3800
   Los Angeles, CA  90067-3218
5  Telephone:  310.277.4110
   Facsimile:   310.277.4730
6
7  Attorneys for Plaintiff
   JIBJAB MEDIA INC.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12 JIBJAB MEDIA INC.,                  CASE NO. CV 12-04178 MMM (JEMx)

13            Plaintiff,              JIBJAB MEDIA INC.'S
                                      MEMORANDUM OF POINTS AND
14    v.                             AUTHORITIES IN SUPPORT OF ITS
                                      OPPOSITION TO DEFENDANT'S
15 WHITE CASTLE MANAGEMENT            MOTION TO DISMISS FOR LACK
   CO.,                               OF PERSONAL JURISDICTION OR,
16                                    IN THE ALTERNATIVE, FOR
            Defendant.                ORDER TRANSFERRING CASE TO
17                                    THE SOUTHERN DISTRICT OF
                                      OHIO
18
                                      Date:         Nov. 5, 2012
19                                    Time:         10:00 a.m.
                                      Courtroom:    780 (Roybal Building)
20                                    Judge:        Hon. Margaret M. Morrow

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1

# TABLE OF CONTENTS

2

Page

3  I.     INTRODUCTION………………………………………………..1

4  II.    BACKGROUND ………………………………………..………2

5  A.   JibJab………………………………………………………………2

6  B.   Viral Marketing on Facebook and Twitter ……………………………3

7  C.   White Castle's Infringing Social Media Campaign …………………5

8  D.   White Castle's Cultivation of the California Market ……………………7

9  III.   ARGUMENT………………………………………………………8

10  A.  The Court should reject White Castle's erroneous argument that JibJab
    insufficiently pled personal jurisdiction ………………………………8

11

12  B.  This Court may exercise specific jurisdiction over White Castle……………10

13     1. White Castle's infringing social media campaign constitutes
        purposeful direction at California………………………………11

14     2. JibJab's claims arise out of forum-related activities ……………………17

15     3. White Castle makes no attempt to satisfy its burden of presenting
        a "compelling case" that the exercise of jurisdiction is unreasonable …..17

16  C.  White Castle presents no basis for transferring this case to the
17     Southern District of Ohio. ………………………………………19

18  IV.  CONCLUSION…………………………………………………..20

19

20

21

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Allstar Marketing Group, LLC v. Felknor Ventures, LLC*, 666 F.Supp.2d 1109 (C.D. Cal. 2009) .................................................................17-20

*American Automobile Association, Inc. v. Darba Enterprises Inc., No. C 09-00510 SI*, 2009 U.S.Dist. LEXIS 37564, 2009 WL 1066506 (N.D. Cal. Apr. 21, 2009)..................................................................................15

*Amini Innovation Corp. v. JS Imports Inc.*, 497 F.Supp.2d 1093 (C.D. Cal. 2007) .................................................................................9

*Brand v. Menlove Dodge*, 796 F.2d 1070 (1986).....................................19

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010).........................................................................................15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................11, 17

*CE Distributing, LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004)..........18

*Calder v. Jones*, 465 U.S. 783 (1984) ......................................................11

*CollegeSource, Inc. v. Academy One, Inc.*, 653 F.3d 1066 (9th Cir. 2011)............15

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ................12

*Edmond v. United States Postal Serv. General Counsel*, 953 F.2d 1398 (D.C. Cir. 1992) ...............................................................................9, 10

*Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003) ...............................................................10

*Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408 (1984) ...........10

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)................10

*Lake v. Lake*,  817 F.2d 1416 (9th Cir. 1987)…………………………………11

*Love v. Associate Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010).......................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2010)................................................... 2, 11, 12, 13, 17

*Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007)..................................18

*Nubonau, Inc. v. NB Labs, Ltd.*, No. 10cv2631-LAB (BGS), 2012 U.S.Dist. LEXIS 32963 (S.D. Cal. Mar. 9, 2012) ......................................16

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182 (9th Cir. 2002)............19

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) .............................9, 10

*STX, Inc. v. Trik Stik, Inc.*, 708 F.Supp. 1551 (N.D. Cal. 1988)........................19

*Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ........9, 11

*Sinatra v. National Enquirer*, 854 F.2d 1191 (9th Cir. 1988) ..............................18

*Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87 (2nd. Cir. 1971) ...................8

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)...............................................9

*The Wine Group LLC v. Levitation Management, LLC*, No. Civ. 2:11-1704
WBS JFM, 2011 U.S.Dist. LEXIS 115740
(E.D. Cal. Oct. 5, 2011).......................................................................13-15

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) .......................................................................................8

**STATE STATUTES**

Cal. Code Civ. Proc. § 410.10...................................................................10

**MISCELLANEOUS**

4 C. Wright & A. Miller, *Federal Practice and Procedure* §10676.6
(3d ed. 2002 & 2012 Supp.)……………………………………………….8

2 *Moore's Federal Practice* ¶ 8.03[1] (3d ed. 2007)……………………….8

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

## I.   INTRODUCTION

Defendant White Castle Management Co. ("White Castle") is subject to personal jurisdiction in California for its deliberate acts of trademark infringement and unfair competition directed against a California-based business, plaintiff JibJab Media Inc. ("JibJab").  White Castle launched a blatantly infringing social media ad campaign that unlawfully used JibJab's U.S.-registered trademark JIBJAB to target and confuse JibJab's social media audience, the largest percentage of which resides in California.  By distributing this falsely co-branded advertisement, White Castle sought to take advantage of JibJab's loyal fan base and famous reputation for producing successful "viral" videos (*i.e.*, videos that proliferate exponentially through repeated sharing by Internet users).

White Castle's ads invited users to participate in a highly interactive online activity whereby users insert their personal photographs into template videos and then share them with their fellow social media friends.  These shared videos were intended to promote the "White Castle" brand and draw more and more users to White Castle's Facebook and Twitter sites, thereby broadening White Castle's audience for future promotions.  White Castle's marketing audience includes California, where it actively promotes the brand, image, and products of its parent and sister entities.

In its motion to dismiss, White Castle's lead argument, if it is serious, is that JibJab failed to sufficiently plead personal jurisdiction.  This argument is legally incorrect.  Courts and treatises have long recognized that the Federal Rules do not require plaintiffs to plead personal jurisdiction.  In any event, JibJab's Complaint contains factual allegations supporting California jurisdiction, and JibJab is permitted to present additional jurisdictional facts by affidavit or otherwise to defeat White Castle's motion.

White Castle next argues there is no basis for finding either general or specific jurisdiction.  This opposition addresses only specific jurisdiction.  For the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1    three-prong specific jurisdiction test, the only prong White Castle addresses is

2    whether White Castle purposefully directed its activities at the forum state.  Thus,

3    the issue of purposeful direction is the crux of this jurisdiction dispute.

4         Ninth Circuit precedent strongly supports the exercise of specific jurisdiction

5    here.  Notably, the principal case White Castle cites to challenge the exercise of

6    general jurisdiction, *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223

7    (9th Cir. 2011), goes completely ignored in White Castle's argument section on

8    specific jurisdiction.  In *Mavrix*, the Ninth Circuit reversed a dismissal for lack of

9    personal jurisdiction, ruling that an Ohio-based website was subject to specific

10   jurisdiction in California because it ran ads directed towards California residents

11   consistent with its commercial exploitation of the California market.  White

12   Castle's actions likewise constitute purposeful direction under *Mavrix*.

13        For the reasons stated herein, the Court should deny White Castle's motion to

14   dismiss and find that White Castle is subject to personal jurisdiction in this case.

15   The Court also should reject White Castle's alternative request to transfer this case

16   to the United States District Court for the Southern District of Ohio.  White Castle

17   offers no basis for ordering such a transfer.  This case should stay in the Central

18   District of California so that JibJab, a California-based small business, can pursue

19   relief against a willful infringer, the defendant.

20   **II.    BACKGROUND**

21       **A.    JibJab**

22        JibJab is a digital entertainment studio with operations based in Venice,

23   California.  (Complaint ¶ 2, 7.)  JibJab solely and exclusively owns the JIBJAB

24   trademark, the use of which by JibJab in connection with its goods and services has

25   been prominent and widespread throughout the United States for more than a

26   decade.  (*Id.* ¶¶ 3, 12-16.)  JibJab is particularly well known for producing and

27   distributing distinctive photo cut-out animation videos and offering social

28   expression products that allow users and paid subscribers the ability to personalize

- 2 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   videos and images by uploading digital photos and inserting images of faces into

2   JIBJAB® content.  (*Id.* ¶ 2, 17-18.)

3       JibJab has a large fan base of more than 28 million registered users.  (*Id.*

4   ¶ 20.)  And JibJab users have viewed JIBJAB® photo-personalized e-cards more

5   than 1.1 billion times.  (*Id.*)  California is home to by far the largest percentage of

6   JibJab's user population by state.  (Spiridellis Decl. ¶ 5 & Ex. 3.)  The user

7   demographics of JibJab's web audience is regularly measured by web analytics

8   company Quantcast, which consistently reports that California accounts for nearly

9   twice as many site visitors than the next highest state.  (*Id.*)

10      White Castle does not deny that it knew JibJab was located in California

11  when it launched its infringing ad campaign.  Indeed, the fact that JibJab is a

12  California-based business was almost certainly known by White Castle.  JibJab

13  marks its content with trademark registration notices, (*id.* ¶ 3), and all of JibJab's

14  trademark registrations list JibJab's address in Venice, California.  (*See, e.g.*,

15  Complaint Exs. A-C.)  Likewise, JibJab's home website (jibjab.com), its

16  Twitter.com page (twitter.com/jibjab), and numerous other online sources (*e.g.*,

17  en.wikipedia.org/wiki/JibJab, linkedin.com/company/jibjab-media,

18  youtube.com/jibjab) publicize the fact that JibJab is located in Venice, California.

19  (Spiridellis Decl. ¶ 4 & Ex. 2.)

20      **B.    Viral Marketing on Facebook and Twitter**

21      Using its highly interactive content in conjunction with linked social media

22  platforms, JibJab has created co-branded promotional content with several high

23  profile clients, including Pepsi, OfficeMax, LucasFilm, Major League Baseball, and

24  others.  (Complaint ¶ 19.)  Due to JibJab's history of success, companies routinely

25  approach JibJab offering significant royalties to launch co-branded promotions.

26  (Spiridellis Decl. ¶ 6.)  JibJab carefully selects these partners and frequently turns

27  down such royalty offers when it believes the creative aspect of the proposal is not

28  a good fit.  (*Id.*)

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Promotional advertising over social media platforms is increasingly popular
2    with businesses because of the potential "viral marketing effect," whereby
3    messages are promoted through repeated content sharing by socially-networked
4    friends who serve as trustworthy sources for recommending products and services
5    to their peers.  *See* "Why Facebook Marketing is important in promoting businesses
6    nowadays?" *WeBuzz* (May 23, 2011) (Hagen Decl. Ex. 3).  Facebook and Twitter,
7    in particular, are attractive platforms for businesses to advertise via their "fan
8    pages" due to the large audiences of potential users.  When users "like" a
9    company's Facebook fan page or "follow" a company's Twitter page, that user will
10   then regularly receive messages and content distributed by the company, and those
11   users and followers can share that content with their own networked friends, and so
12   on.  *See* Peter Wylie, "Should you advertise on Facebook, LinkedIn, or Twitter?"
13   *Social Media Examiner* (April 26, 2011), available at
14   http://www.socialmediaexaminer.com/should-you-advertise-on-facebook-linkedin-
15   or-twitter/ (Hagen Decl. Ex. 4).
16   Businesses with Facebook pages aim to post creative content in order to
17   attract new fans and encourage existing fans and followers share the content with
18   the larger community, thereby growing the company's advertising audience.
19   *WeBuzz* article, *supra*.  In this way, social media advertising is far more interactive
20   and personalized than traditional passive advertising.  *Id.*  Indeed, studies have
21   shown that "Facebook changed customer behavior for the better" and that a
22   company's Facebook fans are its best customers and promoters.  *See, e.g.*, Utpal
23   M. Dholakia & Emily Durham, "One Café Chain's Facebook Experiment,"
24   *Harvard Business Review* (Mar. 2010) (Hagen Decl. Ex. 5).
25   "Facebook also allows users to **run ads to attract 'Likes'** on their pages,
26   which can help you grow your community on Facebook into a business asset."
27   *Social Media Examiner* article, *supra*.  In placing Facebook ads, businesses can
28   target users' demographics and interests.  (Spiridellis Decl. ¶ 12 & Ex. 4.)

Facebook's online submission form for creating targeted banner ads prompts users to specify the geographic scope of the ad, allowing users to restrict ads by country, state, city, and even zip code. (*Id.*) Thus, when placing a Facebook ad, a business has a choice of including or excluding California Facebook users.

### C.   White Castle's Infringing Social Media Campaign

From March 20 to April 28, 2012, White Castle ran a social media promotion using Facebook and Twitter that prominently and repeatedly used the JIBJAB trademark without JibJab's authorization. (Complaint ¶ 4, 21 & Ex. D; Kelly-Bartley Decl. ¶ 9.) Similar to personalized social media content offered by JibJab, the White Castle promotion offered users a selection of different videos in which users could insert photos of their face and then share the videos with their social media friends. (Complaint ¶ 5, 23 & Ex. D.) While this campaign was running, White Castle falsely stated – at the top of its Facebook page – that this photo-personalized promotion was a "Jib Jab" promotion. (Hagen Decl. ¶ 2 & Ex. 1.) This was intentional. During development of the infringing ad campaign, a solicitation for voiceover talent announced: "There are three White Castle spots that will be posted to White Castle's Facebook page. These will be jib jab style and facebook friends can upload their photos in the spots." (Complaint ¶ 5 & Ex. E.)

White Castle's Facebook page had approximately a half million fans when it ran the infringing promotion at issue. (Hagen Decl. ¶ 3.) The announcement of the infringing promotion would have appeared in the "news feed" of each White Castle fan's Facebook home page – unless the individual user's default setting was changed to block such announcements. (Spiridellis Decl. ¶ 8.) During the final week alone of the infringing promotion, the number of White Castle's Facebook fans grew by approximately 50,000. (Hagen Decl. ¶ 3.) That is more than 7 times the rate of fan growth the site has seen in the six months since White Castle took down the infringing promotion. (*Id.*)

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

1    JibJab became aware of the infringement when White Castle "tweeted" on its

2    Twitter page:  "5 Minutes of @JibJab #fame? Why, yes.  That sounds lovely.  [link

3    to Facebook promotion]."  (Complaint ¶ 21 & Ex. F.)  Notably, by inserting

4    "@JibJab" in this tweet, White Castle sent this message not only to its Twitter

5    followers but also directly to JibJab, whose Twitter moniker is "@JibJab."

6    (Spiridellis Decl. ¶ 7.)  As stated above, JibJab's Twitter page announces that it is

7    located in "Venice, California."

8         Subsequently, various JibJab personnel, including JibJab's CEO Gregg

9    Spiridellis, reported seeing banner ads on their Facebook pages stating:  "Want to

10   become a White Castle Jib Jab star?  Click to find out how."  (Complaint ¶ 24 &

11   Ex. G; Spiridellis Decl. ¶¶ 9-10.)  All of these JibJab personnel were in California

12   when they saw this banner ad, and none of them were fans of White Castle's

13   Facebook page when they received the solicitation, but they were all fans of

14   JibJab's Facebook page.  (*Id.*)

15        White Castle speculates that Mr. Spiridellis received the ad "due to

16   specialized settings on [his] Facebook account to capture any ads referencing

17   'JibJab.'"  (Br. at 19.)  This is incorrect.  Mr. Spiridellis did not have any such

18   specialized settings on his account.  (Spiridellis Decl. ¶ 11.)   To the contrary, the

19   most plausible explanation is that White Castle reached JibJab's Facebook fans

20   because White Castle chose the phrase "White Castle Jib Jab star" in its banner ad

21   or otherwise chose a targeting option for the banner ad to connect with JibJab fans.

22   (*See id.* ¶ 12 & Ex. 4.)  In any event, the fact these JibJab fans received the banner

23   ad at all confirms that White Castle chose to allow California Facebook users to be

24   targeted by this banner ad when it had the option to exclude them.  (*See id.*)  It is

25   also evident that California Facebook users beyond JibJab employees and fans

26   engaged with this promotion.  In the comments section for the promotion, at least

27   one of the posters is identifiable as being from California.  (Hagen Decl. ¶ 4 &

28   Ex. 2.)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

White Castle also contends that its use of JibJab's mark was only in connection with the menu item "Chicken Rings," which are not presently sold in California. Again, this is incorrect. Indeed, the Facebook banner ad and Twitter message mentioned nothing about Chicken Rings. And even though the photo-personalized e-card application of the promotion was entitled "Jib Jab Chicken Ring," White Castle's Facebook page as a whole was promoting White Castle's products and services more generally. Thus, White Castle cannot claim that the social media campaign at issue dealt solely with a menu item that is not offered in California. Rather, White Castle used the JIBJAB mark to increase traffic to White Castle's Facebook page and thereby increase the number of its fans and promoters.

### D.   White Castle's Cultivation of the California Market

White Castle, meanwhile, is no stranger to California. Indeed, White Castle has specifically cultivated and exploited its own loyal fan base in California. White Castle's parent and sister companies may be responsible for operating "White Castle" fast food restaurants and distributing frozen food products, but the named defendant is responsible for promoting the "White Castle" brand and image, including in California and through online marketing activities such as its Facebook fan page. (Kelly-Bartley Decl. ¶¶ 2, 5-7.) As stated by White Castle's Vice President, Kim Kelly-Bartley, who submitted a declaration in support of the instant motion:

> White Castle Management Co. . . . uses the Facebook social networking service, and posts on the Facebook website. These postings on Facebook . . . are used to promote services and products offered by White Castle System, Inc. and another company, White Castle Food Products LLC, a sister Co. to White Castle Management Co."

(Kelly-Bartley Decl. ¶ 6.)

1    Among other things, the named defendant licenses the "White Castle" brand
2    to sell merchandise at California retail stores, such as "White Castle" t-shirts at
3    popular clothing outlets. (*Id.* ¶ 2.) The named defendant also operates a website
4    that promotes White Castle® frozen food and publicizes the fact that these food
5    items are sold at more than two dozen supermarket chains throughout California.
6    (*Id.* ¶ 8; Hagen Decl. ¶ 9 & Ex. 7.) Notably, the number of supermarket chains
7    offering White Castle® frozen food in California is higher than in any other single
8    state. (Hagen Decl. Ex. 7.) In sum, White Castle cannot deny its desire and interest
9    in fostering a robust fan/customer base in California.

10   **III.    ARGUMENT**

11        **A.    The Court should reject White Castle's erroneous argument that**
12            **JibJab insufficiently pled personal jurisdiction.**

13        JibJab's Complaint alleges that "Defendant is a corporation subject to
14   personal jurisdiction." (Complaint ¶ 11.) Despite this, White Castle asserts that
15   JibJab's Complaint should be dismissed because JibJab "failed . . . to satisfy [its]
16   pleading burden with respect to personal jurisdiction." (Def.'s Br. at 3.) "On this
17   basis alone," asserts White Castle, "Plaintiff's complaint should be dismissed." (*Id.*
18   at 5.)

19        But "under Federal Rule 8(a) plaintiffs are not required to plead the basis for
20   personal jurisdiction over defendants." 4 C. Wright & A. Miller, *Federal Practice*
21   *and Procedure* § 1067.6 (3d ed. 2002 & 2012 Supp.). Rule 8(a)(1) requires a
22   pleading to contain "a short and plain statement of the grounds for the court's
23   jurisdiction, unless the court already has jurisdiction and the claim needs no new
24   jurisdictional support." Fed. R. Civ. P. 8(a)(1). For purposes of Rule 8,
25   "jurisdiction" refers to subject matter jurisdiction, not personal jurisdiction. *Stirling*
26   *Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 (2d Cir. 1971); 2 *Moore's Federal*
27   *Practice* ¶ 8.03[1] (3d ed. 2007).

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   A plaintiff is only required to meet the burden of establishing personal

2   jurisdiction when a defendant presents a challenge through a motion under Rule

3   12(b)(6). *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). A

4   plaintiff so challenged need only make a "prima facie showing" that jurisdiction

5   exists to withstand a motion to dismiss. *Id.* To make this prima facie showing, a

6   plaintiff may rely on uncontroverted pleading allegations, declarations, and

7   documentary evidence – as well as an evidentiary hearing, if necessary. *Amini*

8   *Innovation Corp. v. JS Imports Inc.*, 497 F. Supp. 2d 1093, 1099-100 (C.D. Cal.

9   2007) (Morrow, J.). A court must accept allegations in the complaint as true, unless

10  controverted by an affidavit submitted by the defendant. *Id.* at 1117. If a defendant

11  adduces evidence controverting the plaintiff's allegations, the plaintiff also may

12  offer facts by affidavit or otherwise. *Id.* "Conflicts between parties over statements

13  contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenneger*

14  *v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

15  White Castle cites *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), to

16  suggest a novel theory that bare allegations of personal jurisdiction in a complaint

17  are automatic grounds for dismissal. But *Swartz* recognized that a plaintiff, once

18  challenged on personal jurisdiction, has an opportunity to present facts to establish

19  a prima facie showing to overcome a 12(b)(6) motion. And in reversing the district

20  court's denial of leave to amend the complaint, the Ninth Circuit noted in *Swartz*

21  that the plaintiff should be allowed an opportunity to present specific factual

22  allegations supporting personal jurisdiction. *Id.* at 758.

23  Here, JibJab is entitled to present facts, as contained in its Complaint and this

24  opposition, to establish a prima facie showing of personal jurisdiction. And if

25  necessary, JibJab should be afforded fair opportunity to pursue discovery keyed to

26  the issue of personal jurisdiction arising from White Castle's production and

27  distribution of an ad campaign designed to reach JibJab fans and social media users

28  in California. *See Edmond v. United States Postal Serv. Gen. Counsel*, 953 F.2d

1398, 1401 (D.C. Cir. 1992) (Ginsberg, J., concurring) (noting, by then-Circuit Judge Ruth Bader Ginsburg, the importance of affording a plaintiff "ample opportunity" to take discovery relevant to personal jurisdiction before dismissing a claim against a defendant).  In any event, the Court should reject White Castle's argument that JibJab did not adequately plead personal jurisdiction.

**B.      This Court may exercise specific jurisdiction over White Castle.**

"[P]ersonal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154-55.  Because California authorizes jurisdiction to the full extent permitted by the Constitution, *see* Cal. Code Civ. Proc. § 410.10, the only question the court must ask in this case is whether the exercise of jurisdiction over the defendant would be consistent with due process. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).

The Fourteenth Amendment's Due Process Clause permits courts to exercise personal jurisdiction over any defendant who has sufficient "minimum contacts" with the forum that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).  There are two recognized bases for exercising personal jurisdiction over a non-resident defendant:  (1) "general jurisdiction," which arises where a defendant's activities in the forum state are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters, and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question.  *See Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).  Here, the issue is whether specific jurisdiction exists.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

The Ninth Circuit applies a three-prong test to determine whether a court may exercise specific jurisdiction over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  A plaintiff bears the burden of satisfying the first two prongs of this test. *Id.*  If that burden is satisfied, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).  White Castle's motion focuses on the first of these three prongs:  whether its infringing ad campaign constitutes purposeful direction.

    1.    **White Castle's infringing social media campaign constitutes purposeful direction at California.**

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Mavrix*, 647 F.3d at 1228.  In tort cases, courts typically apply a "purposeful direction" analysis based on application of an "effects" test derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).  *Mavrix*, 647 F.3d at 1228.  In applying this framework, courts exercise jurisdiction over defendants who have engaged in an act that has an effect in the forum state, even if the act itself takes

1   place outside the forum.  *Id.*  To satisfy this test, a plaintiff must allege that the

2   defendant (1) committed an intentional act, (2) expressly aimed at the forum state,

3   (3) causing harm that the defendant knew was likely to be suffered in the forum

4   state.  *Id.*

5          White Castle's motion only addresses the second element of the *Calder*

6   "effects" test:  the "express aiming" requirement.  As to the first element, White

7   Castle concedes that JibJab sufficiently alleges the commission of an intentional

8   act.  (Br. at 14.)  White Castle does not address the third element, but JibJab readily

9   satisfies the requirement that it suffered harm in California.  Indeed, the Ninth

10  Circuit has recognized that interfering with an intellectual property owner's

11  exclusive rights causes foreseeable harm in that intellectual property owner's home

12  state.  *See Mavrix*, 647 F.3d at 1231 (observing that "[t]he economic loss caused by

13  the intentional infringement of a plaintiff's copyright is foreseeable" in the forum

14  where plaintiff resides).

15         With respect to the "express aiming" requirement, this element is met when

16  "the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff

17  whom the defendant knows to be a resident of the forum state."  *Dole Food Co.,*

18  *Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  When tortious conduct occurs

19  on a nationally accessible website, the jurisdictional analysis considers the context.

20  *Mavrix*, 647 F.3d at 1229.  Merely maintaining a "passive" website alone – akin to

21  posting a billboard advertisement – will not confer personal jurisdiction.  *Id.*  But

22  "operating even a passive website in conjunction with 'something more' – conduct

23  directly targeting the forum – is sufficient."  *Id.*  In determining whether a non-

24  resident has done "something more," courts consider factors such as (1) "the

25  interactivity of the defendant's website," (2) "the geographic scope of the

26  defendant's commercial ambitions," and (3) "whether the defendant 'individually

27  targeted' a plaintiff known to be a forum resident."  *Id.* (citations omitted).

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    In *Mavrix*, the Ninth Circuit found "most salient" the fact that the Ohio-based

2    defendant's publication of the plaintiff's copyrighted photos advanced the

3    defendant's online commercial exploitation of the California market.  *Id.*

4    Importantly, the defendant was not selling access to the unlawfully published

5    photos.  Rather, the defendant was using the photos to gain the benefit of drawing

6    increased traffic to its site.  *Id.* at 1230.  Similarly, here, White Castle used JibJab's

7    trademark not for purposes of selling particular goods or services but to gain the

8    benefit of drawing increased traffic to its site, thereby growing its social media

9    audience to benefit its future marketing activities.  Thus, *Mavrix* supports the

10   exercise of specific jurisdiction over White Castle in this case.

11   Application of the *Mavrix* principles in *The Wine Group LLC v. Levitation*

12   *Management, LLC*, No. Civ. 2:11-1704 WBS JFM, 2011 U.S. Dist. LEXIS 115740

13   (E.D. Cal. Oct. 5, 2011), is particularly relevant and instructive.  In *Wine Group*,

14   the court found specific jurisdiction existed where out-of-state defendants promoted

15   two allegedly infringing brands of vodka on their website and Facebook fan page.

16   *Id.* at *2-*8, *33.  Even though the allegedly infringing products were not yet

17   available for sale in California, the court found the aggregate effect of the

18   defendants' contacts with California sufficient.  *Id.*  The court reached this decision

19   after careful evaluation of the three "express aiming" factors from *Mavrix*.  *First*, as

20   to interactivity, the court found the defendants' use of a Facebook fan page that

21   solicited "Brand Ambassadors" for their vodka, in connection with defendants'

22   otherwise passive advertising website, supported jurisdiction.  *Id.* at *17-*19.

23   *Second*, as to scope of commercial ambition, the court observed that the defendants'

24   online promotion of the accused products sought to cultivate interest by prospective

25   consumers in all fifty states, including California, thereby supporting jurisdiction.

26   *Id.* at *21.  *Third*, as to individual targeting, the court observed that the "express

27   aiming" requirement is met when a plaintiff shows "that the defendant's contacts

28   with forum residents 'enable or contribute to the promotion activities that [give]

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

- 13 -

rise to the law suit.'" *Id.* at \*22 (quoting *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010). The court found the plaintiff's allegations taken as a whole supported a finding of express aiming. *Id.* at \*25.

Here, the facts supporting a finding of express aiming are more compelling than in *Wine Group*. *First*, with regard to interactivity, both White Castle and the defendants in *Wine Group* used Facebook's social media marketing tools to enlist Facebook fans to promote and cultivate interest in their respective brands. But White Castle used a more aggressive viral marketing strategy with a more interactive user experience than in *Wine Group*. White Castle's Facebook page offered a fake "Jib Jab" photo-personalized application, whereby users were encouraged to incorporate their personal photos into White Castle-branded content to be shared with their peers. (Complaint ¶¶ 21, 23 & Ex. D.) The *Wine Group* defendants did not offer a user experience that was as interactive as this. In addition, White Castle enhanced traffic to its infringing promotion on its Facebook fan page through use of Twitter messaging and paid Facebook banner ads. (*Id.* ¶¶ 21-24, Exs. F & G.) The *Wine Group* defendants by contrast did not use paid Facebook ads or other vehicles to draw traffic to their Facebook fan page. 2011 U.S. Dist. LEXIS 115740, at \*7-\*8. Thus, the interactivity of White Castle's infringing ad campaign supports a finding of express aiming.

*Second*, with regard to scope of commercial ambition, both White Castle and the defendants in *Wine Group* used their websites and Facebook pages to cultivate consumer interest on a national basis, including California. The evidence here shows *a fortiori* that White Castle intended its infringing "Jib Jab" promotion to be seen by California Facebook users. White Castle bought Facebook banner ads containing the infringing mark and, when prompted for geographic restrictions, chose to target California users. (Complaint ¶ 24 & Ex. G; Spiridellis Decl. ¶ 12 & Ex. 4.) Thus, White Castle made a conscious decision to not limit the geographic scope of the infringing ad campaign to those Midwestern and Eastern states where

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1   White Castle fast food restaurants are located.  Rather, White Castle included

2   California, where it has a history of exploiting and cultivating its brand and image

3   and also where it promotes the sale of White Castle-branded merchandise and

4   frozen food items.  (Kelly-Bartley Decl. ¶ 2, 8; Hagen Decl. Ex. 7.)

5          Furthermore, White Castle's argument that it has not used its website to make

6   any direct online sales to California is unavailing.  As in *Wine Group*, courts have

7   exercised jurisdiction in the absence of sales to forum residents.  *See, e.g.*,

8   *CollegeSource, Inc. v. Academy One, Inc.*, 653 F.3d 1066, 1075, 1080 (9th Cir.

9   2011) (jurisdiction existed even though website had no paying customers who were

10  forum citizens); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F. 3d 1124,

11  1129-30 (9th Cir. 2010) (jurisdiction existed even though defendant law firm had

12  not accepted any forum residents as clients); *American Auto Ass'n, Inc. v. Darba*

13  *Enters. Inc.*, No. C 09-00510 SI, 2009 U.S. Dist. LEXIS 37564, 2009 WL 1066506,

14  at *4 (N.D. Cal. Apr. 21, 2009) (jurisdiction existed where defendant made no

15  direct sales via its allegedly infringing website but collected user information for

16  future commercial purposes).  Here, too, the court should find that White Castle's

17  infringing ad campaign supported its commercial ambitions in California regardless

18  whether White Castle's sites offer direct online sales.

19         *Third*, with regard to individual targeting, White Castle targeted JibJab,

20  JibJab's social media fan base, and California residents in general to enable and

21  contribute to White Castle's infringing promotional activities.  White Castle cannot

22  deny it was aware of JibJab and its social expression services because White Castle

23  planned to copy JibJab's social expression products all along.  Prior to launching

24  the infringing ad campaign, either White Castle or its agent solicited voiceover

25  talent for what was intended to be a "jib jab style" ad "posted to White Castle's

26  Facebook page."  (Complaint ¶ 5 & Ex. E.)  This shows clearly that the

27  infringement was premeditated.

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

1    In addition, while the ad campaign was still active, White Castle tweeted a

2   link to the infringing promotion directly to JibJab's Twitter account, "@JibJab," –

3   an account that plainly and visibly states that JibJab is located in "Venice,

4   California." (*Id.* ¶ 21 & Ex. F; Spiridellis Decl. ¶ 4 & Ex. 2.)  White Castle also

5   purchased infringing Facebook banner ads, choosing a target audience that included

6   California residents.  (Complaint ¶ 24 & Ex. G; *see* Spiridellis Decl. ¶ 12 & Ex. 4.)

7   Indeed, these ads were ultimately received by JibJab's Facebook fans.  (Spiridellis

8   Decl. ¶¶ 9-10.)  Thus, White Castle individually targeted JibJab, which White

9   Castle knew, actively or constructively, was a California resident.

10    The foregoing factors, taken together, demonstrate the requisite "something

11   more" for establishing that White Castle "expressly aimed" its activities at

12   California.  This satisfies purposeful direction.

13    In its moving brief, White Castle primarily relies on *Nubonau, Inc. v. NB

14   Labs, Ltd.*, No. 10cv2631-LAB (BGS), 2012 U.S. Dist. LEXIS 32963 (S.D. Cal.

15   Mar. 9, 2012), to argue there is no specific jurisdiction.  But *Nubonau* is

16   distinguishable on a number of levels.  Most importantly, the foreign defendants'

17   use of Google ads, Facebook pages, and Twitter accounts had nothing whatsoever

18   to do with advertising the allegedly infringing beauty products at issue.  *Id.* at *21-

19   *24.  As such, these online advertising activities could not be used to establish the

20   "something more" needed to exercise jurisdiction.  *Id.*  In addition, the defendants

21   did nothing to affirmatively or interactively promote the allegedly infringing

22   products in California.  Indeed, the only sales of the accused products in California

23   were instigated by the plaintiff.  *Id.* at *12, *26, *28.  Thus, *Nubonau* did not

24   involve sufficient purposeful direction.  *Id.* at *25, *27, *44.

25    Here, by contrast, White Castle's social media activities actually used the

26   infringing trademark.  And White Castle, not JibJab, instigated the targeting of

27   forum residents.  Thus, *Nubonau* is readily distinguishable.  White Castle is

28   therefore subject to specific jurisdiction.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### 2.    JibJab's claims arise out of forum-related activities.

"A lawsuit arises out of a defendant's contacts with the forum state if there is a direct nexus between the cause of action being asserted and the defendant's activities in the forum." *Allstar Mktg. Group, LLC v. Felknor Ventures, LLC*, 666 F. Supp. 2d 1109, 1123 (C.D. Cal. 2009) (Morrow, J.). "The Ninth Circuit has adopted a 'but for' test when assessing whether an action arises out of a defendant's contacts with the forum state." *Id.* Having satisfied the purposeful direction prong, JibJab easily satisfies this "but for" test. JibJab's infringement claim arises out of the actions of White Castle in distributing a social media campaign using JibJab's trademark via websites accessible to users in California. JibJab therefore satisfies the second prong of the specific jurisdiction test. *See Mavrix*, 647 F.3d at 1228 (affirming second prong satisfied because plaintiff's copyright infringement claim arose out of defendant's publication of photos on a website accessible to users in the forum state).

### 3.    White Castle makes no attempt to satisfy its burden of presenting a "compelling case" that the exercise of jurisdiction is unreasonable.

The third and final prong of the jurisdictional test examines whether it is reasonable to subject the defendant to suit in the forum state. As noted above, the burden falls squarely on White Castle to "present a compelling case" that the exercise of jurisdiction is unreasonable. *Burger King*, 471 U.S. at 477. To find jurisdiction unreasonable, the Court must determine that litigating this dispute in California is "so gravely difficult and inconvenient" for White Castle that it would be placed at a "severe disadvantage in comparison to its opponent." *Id.* at 478. White Castle does not even attempt to argue unreasonableness. Nor should it.

Any argument regarding an alleged burden on White Castle is unavailing. White Castle is not a small company without resources to litigate out of state. Indeed, the defendant is a subsidiary of one of the country's largest fast food chains

1   with estimated annual revenues of $631.7 million.  *See* Sam Oches, "The QSR 50:
2   These 50 brands are setting the pace in the quick-service and fast-casual restaurant
3   industries," *QSR* (Aug. 2012), http://www.qsrmagazine.com/reports/qsr50-
4   2012?page=5 (Hagen Decl. Ex. 6).  This is also not a case involving a foreign
5   citizen defendant, so there are no material sovereignty concerns.  *Allstar*, 666 F.
6   Supp. 2d at 1125.

7       In addition, "with the advances in transportation and telecommunications and
8   the increasing interstate practice of law, any burden [of litigation in a forum other
9   than one's residence] is substantially less than in days past." *Menken v. Emm*, 503
10  F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*,
11  380 F.3d 1107, 1112 (9th Cir. 2004)).  Also, any burden on the defendant litigating
12  in California must be examined "in light of the corresponding burden on the
13  plaintiff." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988).  White
14  Castle would prefer to force a small company like JibJab to litigate in Ohio, which
15  is White Castle's forum of choice.  But this would not eliminate inconveniences for
16  any party because evidence and witnesses remain in California, including evidence
17  from California-based third parties like Facebook and Twitter.

18      California also has an interest in adjudicating this controversy because
19  "California has a strong interest in protecting its citizens from trademark
20  infringement and consumer confusion." *Allstar*, 666 F. Supp. 2d at 1125 (quoting
21  *Nissan Motor Co. Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D.
22  Cal. 2000)).  Indeed, infringing uses of the JIBJAB trademark damage not only the
23  mark itself, but also negatively impact JibJab's current and potential relationships
24  with its California fan base, advertising partners, and investors.

25      Moreover, White Castle has a history of exploiting and cultivating its brand
26  and image in California.  This is evidenced by its licensing of White Castle-branded
27  merchandise for sale in popular retail stores, its entering into licensing deals with
28  California movie studios and broadcasters, and its promotion of frozen food items

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

1    distributed by its sister entity to some twenty-nine different supermarket chains

2    located throughout California.  (Kelly-Bartley Decl. ¶ 2, 8; Hagen Decl. Ex. 7.)

3    Because White Castle benefits from its commercial activities with California, White

4    Castle is not in a position to argue that litigating this dispute in California is "so

5    gravely difficult and inconvenient" that the exercise of jurisdiction is unreasonable.

6         Finally, *Wine Group*, *supra*, noted that the Ninth Circuit takes a "flexible

7    approach" to personal jurisdiction such that, on a case-by-case basis, jurisdiction

8    "can be established with a lesser showing of minimum contacts where

9    considerations of reasonableness dictate."  2011 U.S. Dist. LEXIS 115740, at *30

10   (citing *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1189 n.2 (9th Cir.

11   2002); *see Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986) ("Under

12   this analysis, there will be cases in which the defendant has not purposefully

13   directed its activities at the forum state, but has created sufficient contacts to allow

14   the state to exercise personal jurisdiction if such exercise is sufficiently

15   reasonable.").  The *Wine Group* court observed that defendant's online courting of

16   a national audience, including its decision not to exclude California from its

17   advertising, was a further basis for finding that "[i]t does not seem unreasonable to

18   hold them nationally accountable." *Id.* at *30-*32.  Here, too, the Court would be

19   justified in applying this flexibility to exercise jurisdiction because such exercise is

20   sufficiently reasonable.

21        C.     **White Castle presents no basis for transferring this case to the**

22               **Southern District of Ohio.**

23        White Castle requests, in the alternative, an order transferring this case to the

24   Southern District of Ohio.  "In seeking to transfer a case to a different district, a

25   defendant bears a heavy burden of proof to justify the necessity of the transfer."

26   *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988).  In

27   deciding a transfer motion, a court must weigh multiple factors. *Allstar*, 666 F.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

1    Supp. 2d at 1130-34 (discussing eight relevant factors in denying defendants'
2    alternative transfer request).

3         White Castle presents no argument whatsoever as to why this Court should
4    order a transfer.  Indeed, in the Local Rule 7-3 conference of counsel for this
5    motion, White Castle's attorney offered no basis for this alternative transfer request.
6    (Hagen Decl. ¶ 10.)  Because White Castle failed to satisfy its meet and confer
7    obligations and did not present arguments for a transfer motion in its brief, White
8    Castle has waived any argument in support of this request.

9              [I]t is not enough that the defendant would prefer another forum,
10             nor is it enough merely to show that the claim arose elsewhere.
11             And, not surprisingly, transfer will not be ordered if the result is
12             merely to shift the inconvenience of where the action is located
13             from one party to another . . . .
14   *Allstar*, 666 F. Supp. 2d at 1131 (quoting Wright et al., *supra*, § 3848).  White
15   Castle has failed to carry its heavy burden to justify a transfer.  The Court therefore
16   should deny White Castle's transfer request.

17   **IV.    CONCLUSION**
18        For the reasons stated above, the Court should deny White Castle's motion to
19   dismiss for lack of personal jurisdiction and likewise deny White Castle's
20   alternative request to transfer this case to the Southern District of Ohio.

21   Dated:    October 15, 2012              McDERMOTT WILL & EMERY LLP
22
23                                           By:  _____/s/ Eric W. Hagen_____
24                                                ERIC W. HAGEN
25                                                Attorneys for Plaintiff
                                                  JIBJAB MEDIA, INC.
26
27
28
DM_US 39306247-1.080322.0060

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

JIBJAB'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION