1  Ira M. Siegel, SBN 78142
   email:  irasiegel@earthlink.net
2  LAW OFFICES OF IRA M. SIEGEL
   433 N. Camden Drive, Suite 970
3  Beverly Hills, California 90210-4426
   Tel:   310-435-7656
4  Fax:   310-657-2187

5  Attorney for Defendant
   White Castle Management Co.
6

7

8              UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11 JIBJAB MEDIA, INC.,                CASE NO. CV 12-04178 MMM (JEMx)

12                      Plaintiff     DEFENDANT'S REPLY IN SUPPORT
                                      OF DEFENDANT'S MOTION TO
13       v.                           DISMISS FOR LACK OF PERSONAL
                                      JURISDICTION (FED.R.CIV.P.
14 WHITE CASTLE MANAGEMENT            12(B)(2)), OR, IN THE
   CO. and DOES 1-10,                 ALTERNATIVE, FOR ORDER
15                                    TRANSFERRING CASE TO THE
                        Defendant.    SOUTHERN DISTRICT OF OHIO,
16
                                      Hearing Date:  November 5, 2012
17                                    Time:          10:00 a.m.
                                      Courtroom:     780 (Roybal Building)
18                                    Judge:   Hon. Margaret M. Morrow

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  THE EXPRESS AIMING REQUIREMENT ...................................................... 2

III. THE AUTHORITIES RELIED UPON BY JIBJAB ARE INAPPOSITE .................................................................................................... 3

IV.  JIBJAB'S CONTENTIONS REGARDING ACTIVITIES OUTSIDE THE ALLEGEDLY DAMAGING PROMOTION ARE IRRELEVANT ................................................................................................. 10

V.   DEFENDANT'S PROPOSAL THAT THIS CASE BE TRANSFERRED TO THE SOUTHERN DISTRICT OF OHIO REMAINS OPEN ............................................................................................... 12

VI.  CONCLUSION ................................................................................................... 13

# TABLE OF CASES

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082 (9th Cir. 2000) ............................................................................................. 3

Bauman v. DaimlerChrysler Corp., 644 F.3d 909 (9th Cir. 2011) .......................... 10

Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997) ............................ 3,4

Dole Food Co., Inc. v. Watts, 303 F.3d 1104 (9th Cir. 2002) ............................. 3,4,5

Love v. Associated Newspapers, Ltd., 611 F.3d 601,609 (9th Cir. 2010) ............................................................................................... 11,12

Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218 (9th Cir. 2010) .................................................................................................. 5,6

One True Vine, LLC v. Liquid Brands LLC , 2011 U.S. Dist. LEXIS 58322 (N.D. Cal. 2011) ............................................................................. 5

The Wine Group LLC v. Levitation Management, LLC, No. Civ. 2:11-1704 WBS JFM, 2011 U.S. Dist. LEXIS 115740 (E.D. Cal. Oct. 5, 2011) ............................................................................................. 7,8,9

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir.) ........... 2,7,11,12

## I. INTRODUCTION

Plaintiff JibJab concedes that there is no basis for asserting general jurisdiction over WC Management Co. in California, and limits its arguments to an assertion that there is specific jurisdiction. JibJab's specific jurisdiction argument is completely premised on the astonishing claim that WC Management Co. "expressly aimed" a brief social media promotion at the California market. JibJab's claim of "express aiming" is astonishing because the promotion at issue pertained to the promotion of a single food item, Chicken Rings, that was offered and served **only** at restaurants located in the Midwestern United States and New York City metropolitan area. See the previously-filed Declaration of Kim Kelly-Bartley, ¶ 9. Moreover, these restaurants are not operated by WC Management Co, but are operated by White Castle System, Inc. ("WC System"), a different legal entity from WC Management. WC System is a sister company to Defendant, but is not a party to this action.

The geographic markets where the restaurants operated by WC System are located, the only locations at which the Chicken Rings food product at issue in this case was being promoted, are far removed from the State of California. The closest of these restaurants is located more than 1000 miles from California. In light of this geographic remoteness, JibJab's argument that this promotion was expressly aimed at the California market is nonsensical and without logical basis.

Not surprisingly under these circumstances, the legal authorities JibJab cites do not support its position, and JibJab, who bears the burden of establishing personal jurisdiction, *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2003), failed to establish a *prima facie* case of specific jurisdiction.

## II.  THE EXPRESS AIMING REQUIREMENT

JibJab correctly observes (Opposition, p. 11 ) that WC Management Co.'s motion focused on the "express aiming" requirement for specific jurisdiction. Defendant's motion focused on this element for good reason – the absence of any "express aiming" at the California market in the promotion at issue in this case is manifest from the geographical remoteness from California of the restaurants offering the food product being promoted and the regional (non-California) nature of WC Management Co.'s business.  It simply makes no sense that WC Management Co. (or any other business) would target the California market for a promotion that involves a food product that is only offered at restaurants over a 1000 miles away.

Moreover, "express aiming" is the test most commonly used by courts to protect the notions of fair play and due process guaranteed by the Constitution against allegations of specific jurisdiction.   Indeed, were it not for the "express aiming" requirement of specific jurisdiction, "every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of business is

located." *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 420 (9th Cir. 1997). Given the procedural standard of accepting uncontroverted allegations in complaints and the practice of accepting a plaintiff's version of events for purposes of determining jurisdiction, the "express aiming" requirement is, as a practical matter, the only safeguard that precludes an unscrupulous or overly aggressive plaintiff from circumventing Constitutionally protected due process by alleging (whether true or not) intentional torts in its home forum. *Bancroft & Masters, Inc. v. August Nat'l, Inc.,*. 223 F.3d 1082, 1087 (9th Cir. 2000).

Thus, as JibJab acknowledges(Opposition, p. 2),the issue of "express aiming" is the crux of this motion.

### III.  THE AUTHORITIES RELIED UPON BY JIBJAB ARE INAPPOSITE

The legal authorities cited by JibJab simply do not support the exercise of specific jurisdiction in this case. JibJab relies upon *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104 (9th Cir. 2002), for the unremarkable proposition that the requirement of "express aiming" is met when "the defendant is alleged to have engaged in wrongful conduct <u>targeted</u> at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* at 1111. Curiously missing from JibJab's discussion of *Dole* is the a description of the abundance of California activities of the defendants that were alleged to have taken place in that case.

In *Dole*, the complaint and affidavits expressly alleged that the defendants frequently communicated directly with Dole managers located in California by

telephone, fax and mail, and that one of the defendants traveled to California on multiple occasions, all for the purpose of encouraging Dole personnel to take the fraudulently induced actions alleged in the complaint. *Id*. at 1109. While the court found specific jurisdiction in Dole, it did so only because the specific allegations in the complaint and affidavits relating to the California-related activities noted above, made a prima facie showing of express aiming, and hence personal jurisdiction. *Id.* at 1112.

In sharp contrast to *Dole* , JibJab has made no such showing of California-related activity by Defendant in connection with the promotion to which the Complaint in the instant case is directed. Specifically, JibJab's complaint and declaration are both conspicuously void of, for example, any allegations that WC Management Co. physically performed any of the allegedly infringing activities in California, or that WC Management Co. directly contacted California residents in California in connection with the promotion here at issue.

As both parties appear to recognize, the Ninth Circuit has long recognized that Internet advertising in a state is insufficient by itself to subject the advertiser to jurisdiction in that state. *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418 (9th Cir. 1997). There must be "something more" indicating that the defendant "purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* Further, an allegation that a defendant acted "with knowledge that a the plaintiff's operations are based in the forum and that the harm will be felt

there **is insufficient** to establish personal jurisdiction without a further showing that the defendant otherwise expressly aimed its activities at the forum." *One True Vine, LLC v. Liquid Brands LLC*, 2011 U.S. Dist. LEXIS 58322 at *6 (N.D. Cal. 2011). (Emphasis added.)

JibJab also relies upon *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218 (9th Cir. 2010), for its argument that WC Management Co. was "advance[ing] [its] online commercial exploitation of the California market" with the promotion at issue. In terms of commercial exploitation of the California market, however, it is difficult to imagine how *Mavrix* could differ more. In *Marvix,* the defendant ran a celebrity gossip website, descriptively named "celebrity-gossip.net." *Id.* at 1222. This website published copyrighted photos of celebrities, and included paid third-party advertisements for jobs, hotels, and vacations in California. The website also featured a "Ticket Center, which was a link to the website of a third –party vendor that sold tickets to nationwide events, including events in California." *Id.*

The website in *Marvix* differs considerably from the social media activities of WC Management Co., and is totally different in terms of commercialization. As the Court is likely well-aware, websites such as Brand's in the *Marvix* case generate traffic by their content posting (such as the celebrity photos at issue in *Marvix),* and then monetize that traffic by directing visitors to the websites of other vendors or merchants. This re-direction of website traffic occurs when visitors to the original website "click" on one of the "links" on the webpage. Third party

merchants and vendors pay for the traffic that is re-directed to their sites (in the parlance of the industry, they pay for "clicks").  The more traffic the original website generates, the greater the likelihood some of those visitors will "click" on the links of the advertisers, resulting in a higher volume of traffic that is re-directed to websites of the third-party merchants and vendors.  In other words, the more Internet traffic that websites such as the one involved in *Marvix* generate, the greater the revenue the website owner receives.  That is, in fact, the business model upon which such websites generate revenue. And, the use of this business model was the dispositive factor in the Marvix court's decision:

> In this case, we find most salient the fact that Brand used Mavrix's copyrighted photos as part of its exploitation of the California market for its own commercial gain.

*Marvix* at 1229.

Quite unlike the website in Marvix, the WC Management social media activities do not generate revenue from re-directing its traffic, and JibJab has failed to meet its burden of showing that the promotion here in question generated any revenue, or could have logically been intended to generate any revenue from the California market.  In other words, JibJab has failed to meet its burden of showing that the Chicken Rings promotion at issue in this lawsuit was "expressly aimed" at the California market.

The reason for this failure is not simply a failure of proof. There is "no there there" because WC Management Co. was not exploiting the California market with the promotion in question. As JibJab correctly notes, the jurisdictional analysis appropriately considers the context. (Opposition, p. 12). The context in this case is that the promotion at issue involved a single product that is **not** sold in California, but instead is only offered at restaurants many states across the country away from California. In this case, there is zero evidence (in either the form of allegations in the Complaint or declarations) that the California market influenced the promotion, and no reasonable basis to believe such evidence exists. Thus, JibJab has failed to meet its burden of presenting a prima facie case of specific jurisdiction.

Further in this regard, there is no evidence that WC Management Co. intended to exploit the California market with the promotion at issue. See *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 807 (9th Cir. 2003). Here, the absence of such an intent on the part of WC Management Co. is obvious due to the illogic of exploiting the California market in connection with a promotion for a food item offered only in the Midwestern United States and New York City metropolitan area.

JibJab attempts to use *The Wine Group LLC v. Levitation Management, LLC,* No. Civ. 2:11-1704 WBS JFM, 2011 U.S. Dist. LEXIS 115740 (E.D. Cal. Oct. 5, 2011), as support for the argument that WC Management Co. was using the

promotion to "cultivate interest by prospective consumers in all fifty states, including California." (Opposition, p. 13). JibJab disingenuously argues that the facts in this case support a finding of express aiming "are more compelling than in *Wine Group*." (Opposition, p. 14). A realistic comparison of the facts, however, compelling leads to the exact opposite conclusion.

First, in contrast to the present case, the complaint in *Wine Group* alleged that the "[a]cts giving rise to the claims asserted herein have been expressly aimed at, have occurred in, and will continue to occur in California and this District." *Id.* at 2,6. The Complaint in this case has no such allegations[1]; it has but a single sentence on personal jurisdiction: "Defendant is a corporation subject to personal jurisdiction." (Complaint, ¶ 11). In fact, this lack of any specific allegations led Defendant to waste the Court's time arguing against general jurisdiction, only to find out that JibJab was not asserting any such basis for jurisdiction.

Further, the alleged infringement in *Wine Group* was part of a "national marketing strategy," and the defendant had taken preliminary steps for distribution in California by engaging in discussions (unsuccessful as they may have been) with a potential distributer California. *Id.* at 6. Still further, the facts of record in

---

[1] For reasons that are perplexing to Defendant, JibJab's Opposition (pp. 8-10) mocks Defendant's mention of the scarcity of allegations relating to personal jurisdiction in its Complaint, and even questions the seriousness of that observation. JibJab then notes that personal jurisdiction allegations can be added by affidavit. (p.9). Accordingly, its failure to provide sufficient allegations to support personal jurisdiction in its Complaint, and its failure to provide sufficient supporting evidence by affidavit or declaration strongly implies that JibJab simply lacks evidence to support specific jurisdiction in this case.

*Wine Group* made clear that the defendant intended to enter the California market in the very near future. In this regard, the website of the defendant in *Wine Group* stated that their products will be "Coming soon" to every state. *Id.* Under these conditions, there is little surprise that the court found that the purpose of the defendant's website in *Wine Group* was to attract new business, and that the court unsurprisingly found that the defendant's immediate geographic ambitions included the State of California. While JibJab's contention regarding future commercial purposes (Opposition, p. 15) might sound plausible under the facts of *Wine Group,* that contention is unsupportable under the facts in the present case.

There is no allegation or evidence in this case that demonstrates, or even suggests, that there are any geographic ambitions in the California market for the near term future for either White Castle restaurants or Chicken Rings. To the contrary, the fact that White Castle restaurants have operated continuously since 1921, and that no effort has been made to open up White Castle restaurants within 1000 miles of California in the past 91 years is highly compelling evidence of the lack of commercial ambitions for White Castle restaurants in the California market.

In any event, JibJab's notion is that a two week social media promotion during the Spring of 2012, for a food item (i.e., that was offered only at restaurants in the Midwestern United States and New York City metropolitan markets, was expressly aimed at the California market with the intent of generating future

interest in customers located more than 1000 miles from the nearest restaurant. Not only is there no factual support for such a far-fetched notion, it is highly unlikely that any reasonable person could entertain such a scheme. Quite unlike the facts in *Wine Group,* JibJab has presented no evidence or uncontested allegation to support this argument, and thus has made no prima facie case for specific jurisdiction.

### IV. JIBJAB'S CONTENTIONS REGARDING ACTIVITIES OUTSIDE THE COMPLAINED PROMOTION ARE IRRELEVANT

After JibJab conceded that there was no basis for general jurisdiction over WC Management Co. (Opposition, pp. 1-2), JibJab argues (Opposition, pp. 7-8) that "White Castle ... is no stranger to California," and that its licenses "the 'White Castle' brand to sell merchandise at California retail stores, such as 'White Castle' t-shirts at popular clothing outlets." JibJab further argues that Defendant "promotes White Castle® frozen food and publicizes the fact that these food items are sold at more than two dozen supermarket chains throughout California." *Id.* Aside from the uncontested fact that the named Defendant, WC Management Co. does not sell frozen food in California (**see original supporting Memorandum**, pp. 20-21), these activities do not form part of the alleged infringement, and are irrelevant to the issue of specific jurisdiction. *Bauman v. DaimlerChrysler Corp.,* 644 F.3d 909, 919 (9th Cir. 2011).

Further, JibJab's argument (p. 7) that "White Castle's Facebook as a whole

was promoting White Castle's products and services more generally" is of no avail since it is not "White Castle's Facebook as a whole" that is the subject of the Complaint. The allegedly intentional acts that allegedly caused harm, the promotion that allegedly "prominently and repeatedly used the JIBJAB trademark without authorization" related only to the Chicken Rings promotion, and were directed entirely to the Midwestern United States and New York City metropolitan areas of the United States, the locations where the promoted food item was being offered. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010). ("Here, BigTime.tv did contact people in California regarding the promotion that would eventually lead to this law suit. However, those discussions did not enable or contribute to the promotion activities that actually gave rise to the law suit. The intentional acts that allegedly harmed Love-- including BigTime.tv's licensing of the recordings and promotion of Good Vibrations on television and the internet-- were directed entirely at markets in the United Kingdom and Ireland, and Love does not argue differently. * * * Because BigTime.tv did not purposefully direct any of the relevant intentional acts at California, it was not subject to the jurisdiction of a court in that state." (Footnote omitted.))

  Moreover, the Chicken Ring promotion here at issue was logically intended to be limited to the Midwestern United States and the New York City metropolitan area, and was not intended to extend to geographic areas that are remote from the areas where the promoted product was being offered. Under these circumstances,

1  the mere fact information pertaining to the promotion was accessible in California
2  is insufficient to confer personal jurisdiction. *Id.* ("Where a defendant's " express
3  aim was local," the fact that it caused harm to the plaintiff in the forum state, even
4  if the defendant knew that the plaintiff lived in the forum state, is insufficient to
5  satisfy the effects test."), *citing Schwarzenegger,* 374 F.3d at 807.

V.  **DEFENDANT'S PROPOSAL THAT THIS CASE BE TRANSFERRED TO THE SOUTHERN DISTRICT OF OHIO REMAINS OPEN**

JibJab remarks that the subject of transfer to the Southern District of Ohio was not justified during a pre-motion conference. It goes without saying, of course that the United States District Court for the Southern District of Ohio indisputably has jurisdiction over White Castle Management Co. If JibJab prefers to merely have the instant case dismissed, with JibJab's being allowed to file a new case in the Southern District of Ohio, that is acceptable to White Castle Management Co.

//

//

//

??

## VI. CONCLUSION

For the reasons discussed above and as set forth in the Memorandum accompanying Defendant White Castle Management Co.'s Motion, White Castle Management Co. requests that Defendant's Motion to Dismiss for Lack of Jurisdiction be granted.

Respectfully submitted,

Date:  October 22, 2012

/S/ Ira M. Siegel
Ira M. Siegel, SBN 78142
email:  irasiegel@earthlink.net
LAW OFFICES OF IRA M. SIEGEL
433 N. Camden Drive, Suite 970
Beverly Hills, California 90210-4426
Tel:   310-435-7656
Fax:  310-657-2187

Attorney for Defendant
White Castle Management Co.