1 ERIC W. HAGEN (SBN 192340)
  ehagen@mwe.com
2 VANESSA I. LEFORT (SBN 260687)
  vlefort@mwe.com
3 McDERMOTT WILL & EMERY LLP
  2049 Century Park East
4 Suite 3800
  Los Angeles, CA 90067-3218
5 Telephone: 310.277.4110
  Facsimile: 310.277.4730
6
7 Attorneys for Plaintiff
  JIBJAB MEDIA INC.

8

9

10                 UNITED STATES DISTRICT COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12

13 JIBJAB MEDIA INC.,                    CASE NO. CV 12-04178 MMM (JEMx)

14          Plaintiff,                   **PLAINTIFF JIBJAB MEDIA INC.'S
                                         OPPOSITION TO DEFENDANT
15     v.                                WHITE CASTLE MANAGEMENT
                                         CO.'S RENEWED MOTION TO
16 WHITE CASTLE MANAGEMENT               DISMISS FOR LACK OF
   CO.,                                  PERSONAL JURISDICTION**
17
          Defendant.                     Date:      September 9, 2013
18                                       Time:      10:00 a.m.
                                         Courtroom: 780 (Roybal Building)
19                                       Judge:     Hon. Margaret M. Morrow

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

# TABLE OF CONTENTS

**Page**

**I.      INTRODUCTION** ................................................................................................ 1

**II.     BACKGROUND** ................................................................................................ 2

    A.    The Court exercised jurisdiction over White Castle in its May 14, 2013 Order ................................................................................ 2

    B.    White Castle failed to timely answer JibJab's complaint .................... 3

    C.    White Castle filed its Renewed Motion to Dismiss based upon incomplete and inaccurate declarations ........................................ 4

    D.    White Castle has obstructed JibJab's ability to obtain discovery, including discovery that relates to jurisdiction ................................. 6

    E.    Sufficient evidence confirms that White Castle knew or should have known of JibJab, its trademark, and its location in California ................................................................................ 8

        1.    Zimmerman Advertising documents ............................................. 8

        2.    @WhiteCastle's April 19, 2012 Tweet to @JibJab ................... 9

        3.    Ms. Blashford's "jibjab" searches ............................................. 10

        4.    New evidence of online monetization ...................................... 11

**III.    ARGUMENT** ................................................................................................ 12

    A.    White Castle's renewed motion to dismiss should be stricken for failure to meet and confer under Local Rule 7-3 ........................ 12

    B.    White Castle's declarations are premature, incomplete, misleading, and do not rebut the Court's finding that the exercise of jurisdiction is proper ................................................. 13

    C.    Despite only limited discovery, evidence already establishes conclusively that White Castle knew or should have known JibJab owned the JIBJAB® mark and was a California-based company ........................................................................... 14

    D.    There are other grounds for exercising jurisdiction over White Castle ........................................................................... 16

        1.    White Castle used the "Jib Jab" mark to drive "likes" to its Facebook page and then used its Facebook page to sell goods online directly to those same Facebook fans ................. 16

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

      2.    The Court has discretion under the Ninth Circuit's "flexible approach" to exercise jurisdiction where considerations of reasonableness dictate .................................. 17

4

5

  E.    The Court should direct the Clerk to enter a default or otherwise order White Castle to answer immediately .......................................... 18

6

7

**IV.**    **CONCLUSION** ............................................................................. 19

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Brand v. Menlove Dodge*, 796 F.2d 1070
(9th Cir. 1986) ...................................................................................17, 18

*Deckers Outdoor Corp. v. Turner*, No. CV10-7273 CAS,
2011 WL 781937 (C.D. Cal. Feb. 28, 2011) ...............................................6

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259
(9th Cir. 1996) .........................................................................................14

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218
(9th Cir. 2010) ....................................................................................15, 17

*Myers v. Bennett Law Offices*, 238 F.3d 1068
(9th Cir. 2001) ......................................................................................5, 13

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182
(9th Cir. 2002) .........................................................................................17

*Sher v. Johnson*, 911 F.2d 1357
(9th Cir. 1990) ......................................................................................5, 13

*Warner Bros. Home Entm't v. Jimenez*, No. CV 12-9160 FMO (JEMx),
2013 U.S. Dist. LEXIS 97139 (C.D. Cal. July 8, 2013) ..............................15

*Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668
(9th Cir. 2012) .............................................................1, 2, 3, 13,15

*The Wine Group LLC v. Levitation Mgmt., LLC*, No. Civ. 2:11-1704 WBS
JFM, 2011 U.S. Dist. LEXIS (E.D. Cal. Oct. 5, 2011) ...........................17, 18

## FEDERAL RULES

Fed. R. Civ. P. 12(a)(4)(A) ...........................................................................3, 18

Fed. R. Civ. P. 33(a)(2) .......................................................................................7

Fed. R. Civ. P. 34(2)(a) .......................................................................................7

Fed. R. Civ. P. 36 (a)(3) ......................................................................................7

## LOCAL RULES

Civ. L.R. 7-3 .....................................................................................................12

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

## I.      INTRODUCTION

This Court has personal jurisdiction over White Castle.  Indeed, this Court exercised jurisdiction over White Castle in its Order of May 14, 2013 (Doc. 18). Since then, White Castle has defied that Order by refusing to file an answer by the May 28 deadline provided by Federal Rule 12(a)(4)(A) and refusing to engage in discovery or even provide initial disclosures.  Instead, on June 3, White Castle filed the instant Renewed Motion to Dismiss – without leave, without meeting and conferring, and without any discovery to form a proper basis for such motion.

Although the May 14 Order allowed for the possibility of a renewed jurisdictional motion if White Castle could establish that it did not know JibJab was a California-based company at the time of infringement, the Court expressly conditioned that any such motion would occur "*after* appropriate discovery" and "at a *later* stage of the proceedings." (5/14/2013 Order (Doc. 18) at 16 (emphasis added).)  We are nowhere near that point, as White Castle still has not produced even a single document in this case, despite document requests propounded 47 days ago.  White Castle instead relies on four self-serving declarations that fall far short of rebutting JibJab's prima facie case of jurisdictional knowledge under the Ninth Circuit's "knew or should have known" standard set forth in *Washington Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 678 (9th Cir. 2012).

But that should not stop the Court from denying White Castle's jurisdiction arguments once and for all.  The limited available evidence JibJab has collected so far, despite White Castle's obstruction, confirms that this Court was correct in exercising jurisdiction.  For example, the marketing team for the "White Castle Jib Jab Star" promotion shared communications that included an intentional strategy to distribute knock-off "Jib Jab" videos based on those found at JibJab's website:

**Week 2 – Create a Jib Jab Slider Head App** that allows you to make viral videos of Slider Heads.  Fun, viral way to engage with the brand with our Millennial, Tech savvy communities.  Please see the link below for a number jib jab videos  to serve as a style reference.  http://sendables.jibjab.com/originals

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

(Hagen Decl., Ex. 1.)  The JibJab.com link used in this message contained a conspicuous notice that "JibJab® . . . [is] a registered trademark of JibJab Media Inc." – a fact confirmed by web archives.  (*Id.*, Ex. 2.)  In addition, during the infringing social media campaign, White Castle (through its agent, Zimmerman Advertising LLC) sent a message via its Twitter account, @WhiteCastle, to JibJab's Twitter account, @JibJab.  (Spiridellis Decl. ¶ 4 & Ex. 1.)  The profile summary for @JibJab prominently stated then (and still does today) that JibJab is based in "Venice, California."  (*Id.* ¶ 5 & Exs. 2, 3.)  These facts alone are enough to conclusively establish personal jurisdiction over White Castle in this case.

After a discussion of relevant background and procedural facts, we explain why the Court should deny White Castle's motion as improper, unsupported, and unwarranted.  Importantly, with the December 6, 2013 fact discovery cutoff fast approaching, the Court should not reward White Castle for its manufactured delay.  The Court should either direct the Clerk to enter a default against White Castle, as JibJab requested on June 10, 2013 (Doc. 22), or order White Castle to answer and provide initial disclosures within a shortened amount of time.  White Castle's delay tactics have already consumed half of the six-month fact discovery period.  JibJab is determined to keep the case schedule on track and believes it can do so, but only if the Court prevents White Castle from causing further prejudicial delays.

## II.   BACKGROUND

### A.   The Court exercised jurisdiction over White Castle in its May 14, 2013 Order.

The only disputed issue in White Castle's original motion to dismiss, like in the renewed motion, was whether, in the three-part specific jurisdiction analysis, JibJab had satisfied the "express aiming" requirement of the purposeful direction element.  (5/14/2013 Order at 8.)  In deciding this issue, the Court relied on *Washington Shoe* – a Ninth Circuit opinion that issued on December 17, 2012, shortly after the parties in this case had submitted their briefing and presented oral

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

arguments.  The Ninth Circuit underscored that the "express aiming" requirement is satisfied when a plaintiff asserting intentional infringement shows that the out-of-state defendant "knew or should have known" of the existence of the plaintiff's intellectual property and forum residence.  *Washington Shoe*, 704 F.3d at 678.

Applying that standard, the Court noted that "White Castle does not deny that it knew JibJab was a California company" and that JibJab "notes that the fact that JibJab is located in Venice, California is well-publicized on JibJab's websites and social media platforms." (5/14/2013 Order at 15.)  On this record, the Court found sufficient basis to exercise jurisdiction.  (*Id.* at 17 (finding that "JibJab has satisfied the first two elements for specific jurisdiction" and that White Castle failed to carry its burden of "'present[ing] a compelling case' that the presence of some other considerations would render jurisdiction unreasonable." (citations omitted)).)

The Court noted, however, that "White Castle may renew its objection to the exercise of personal jurisdiction by the court **at a later stage of the proceedings** if it can demonstrate that it did not know JibJab was a California-based company." (*Id.* at 17-18 (emphasis added).)  The Court also noted that any such motion would have to occur "**after appropriate discovery**." (*Id.* at 16 (emphasis added).)

**B.    White Castle failed to timely answer JibJab's complaint.**

Following the May 14 denial of its motion to dismiss, White Castle was required under the Federal Rules to file a responsive pleading no later than May 28, 2013. *See* Fed. R. Civ. P. 12(a)(4)(A) ("[I]f the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action.").  White Castle ignored this deadline.

On June 3, after JibJab inquired whether White Castle was defaulting, White Castle filed the instant Renewed Motion to Dismiss.  (Hagen Decl. ¶ 4 & Ex. 3.)[1]

---

[1] On June 10, 2013, JibJab filed a request for entry of default (Doc. 22).  The next day, the Clerk notified JibJab that the requested relief could not be entered absent direction from the Court because White Castle, in the meantime, had filed a "Renewed Motion to Dismiss" on June 3, 2013 (Doc. 20) – one week after the answer deadline.  Thus, if JibJab had filed its request for entry of default after May

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

White Castle's renewed motion came as a surprise for at least three reasons. *First*, it was filed after the answer deadline. *Second*, no discovery had yet occurred. *Third*, White Castle made no attempt to meet and confer on the supposed new "evidence" it was submitting. (*Id.* ¶ 4.)

### C.   White Castle filed its Renewed Motion to Dismiss based upon incomplete and inaccurate declarations.

White Castle argues that this case should be dismissed for lack of personal jurisdiction because it had no knowledge of JibJab, its trademark rights, or its location in California at the time of infringement.  In its renewed motion, White Castle submits four declarations of White Castle personnel – Lynn Blashford, Steve Zvonek, Jennifer Zuehlke, and Raydelle Clement – and represents to the Court that "Defendant has attached declarations by all of the individuals at White Castle involved in the selection, implementation or approval of the promotion to which this lawsuit is directed." (Def.'s Br. at 4.)

That statement is inaccurate, according to White Castle's own admission in a subsequent discovery response.  In response to an interrogatory requesting the identity of persons involved in the promotion at issue, White Castle lists three more employees:  Tamara Krueger, Kelly Davie, and Debbie Cline.  (Hagen Decl. Ex. 4 at 7 (Resp. to Interrog. No. 3).)  But even this is incomplete.  Last Thursday, White Castle's advertising agency, Zimmerman Advertising LLC, produced documents in response to a subpoena.  This document production included emails that identify even more White Castle personnel involved in the promotion, including Kim Bartley, Tina Mathews, and Sundina Palmer.  (*Id.* Exs. 1 & 5.)  White Castle's list of declarants is therefore incomplete and cannot form the basis for an alleged lack of corporate knowledge.

---

28, 2013, and before 8:30 p.m. on June 3, 2013 (*i.e.*, the filing time of White Castle's renewed motion), the Clerk could have entered a default as a matter of course.

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

1   White Castle also did not submit any declarations from its agents, Northlich

2   LLC or Zimmerman Advertising LLC, both of whom acted pursuant to their agency

3   agreements with White Castle. (*Id.* Exs. 6 & 7.)  Zimmerman, in particular,

4   implemented the infringing promotion under White Castle's authority and direction.

5   Indeed, Zimmerman operated White Castle's Facebook and Twitter sites –

6   including, as discussed below in part II.E, taking specific direction from White

7   Castle to insert "Jib Jab" in social media ads. (*Id.* Exs. 8 & 9.)  Discovery of

8   Zimmerman personnel is thus relevant to determining actions attributable to White

9   Castle.  And statements about White Castle's knowledge are incomplete if they do

10  not include relevant persons acting pursuant to White Castle's authority and

11  direction. *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001)

12  ("For purposes of personal jurisdiction, the actions of an agent are attributable to

13  the principal." (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990))).

14  Finally, with regard to Northlich, all four White Castle declarants assert that

15  Northlich created the infringing promotion and also claim that it was Northlich's

16  responsibility to obtain any necessary trademark clearances. (Blashford Decl. ¶ 10;

17  Zvonek Decl. ¶ 8; Zuehlke Decl. ¶ 7; Clement Decl. ¶ 7.)  But Northlich's

18  agreement with White Castle says otherwise.  Under a provision entitled

19  "TRADEMARK OBLIGATIONS," Northlich can perform clearance searches

20  "only upon Client's [White Castle's] request." (Hagen Decl. Ex. 6 § XI.B.)  More

21  importantly, the provision states that "Client [White Castle] shall be responsible for

22  the ultimate review of all search reports and for the clearance of any Marks." (*Id.*)

23  White Castle cannot separate itself completely from Northlich.  Because White

24  Castle took responsibility for trademark clearances, discovery of Northlich is

25  important to understand what knowledge is imputed to White Castle.

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

1

2

**D.      White Castle has obstructed JibJab's ability to obtain discovery,**

**including discovery that relates to jurisdiction.**

3     For three months, White Castle has tried to override this Court's May 14

4  Order and its June 12 Case Management Order by trying to restrict discovery to

5  only jurisdictional issues while at the same time blocking JibJab from obtaining

6  discovery that would shed light on jurisdictional issues.  Notably, JibJab

7  propounded a first set of requests for admission, interrogatories, and requests for

8  production, and a 30(b)(6) notice to White Castle on July 3, with responses due

9  August 2.  Instead of responding by this deadline, White Castle filed, on August 1,

10  a Motion for Protective Order Precluding Discovery Beyond Jurisdictional Issue,

11  with a hearing date of August 27 (Doc. 33), thereby ensuring that any discovery

12  disputes would not be heard before JibJab's deadline to file this opposition brief.

13     On Friday, August 16, 2013, Magistrate Judge McDermott put an end to

14  White Castle's discovery games.  In a Minute Order, he correctly observed that

15  White Castle "misreads and overstates the District Court's ruling on White Castle's

16  Motion to Dismiss for lack of personal jurisdiction," adding:

> The Court did not limit discovery to the jurisdictional
> issue.  Far from it, the Court entered a Case Management
> Order on June 12, 2013 that does not distinguish
> jurisdictional from non-jurisdictional discovery.  Indeed,
> with a December 6 fact discovery cutoff date, limiting
> discovery to jurisdictional issues plainly would be
> impractical.
>
> Nor is the case cited for comparison purposes by the
> District Judge, *Deckers Outdoor Corp. v. Turner*, 2011
> WL 781937*3-*5 (C.D. Cal.), helpful to White Castle.  In
> *Deckers*, Judge Snyder ordered jurisdictional discovery
> before ruling on a motion to dismiss.  Here, of course,
> Judge Morrow denied White Castle's motion to dismiss
> but left the door open to a later renewal of the motion if
> subsequent discovery established a basis for it.  Judge
> Morrow's ruling plainly did not contemplate the sort of
> restriction on non-jurisdictional discovery asserted by
> White Castle.

27  (8/16/2013 Order (Doc. 39) at 1 (emphasis in original).)

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

1   This ruling is welcome, but it does not change the fact that White Castle still

2   has not produced a single document after JibJab propounded requests 47 days ago.

3   Without documents, the scheduling of depositions is a meaningless exercise.  Also,

4   as of this opposition due date, White Castle still has not adequately responded to

5   interrogatories and requests for admissions – and has waived its objections by

6   failing to timely respond.[2]

7   By way of example of how White Castle has drawn improper lines in

8   objecting, White Castle refused to answer as "outside the scope of jurisdictional

9   discovery" JibJab's simple Request for Admission No. 1:  "Admit that on April 19,

10  2012, White Castle sent a message via its Twitter account (@WhiteCastle) that

11  stated:  "5 Minutes of @JibJab #fame? Why, yes. That sounds lovely.

12  on.fb.me/HHNMF."  (Hagen Decl. Ex. 2, Def.'s RFA Resps. at 3.)  Importantly, the

13  Court exercised personal jurisdiction over White Castle in this case based, in part,

14  on this very Twitter message.  (*See* 5/14/2013 Order (Doc. 18) at 15 & n.41.)

15  White Castle has not yet supplemented its discovery responses.

16  White Castle likewise continues to block requests that are reasonably

17  calculated to lead to the discovery of admissible evidence on such jurisdictionally

18  relevant issues as:

19  • the circumstances under which White Castle used the JIBJAB mark or

20      was otherwise aware of JibJab and its services (Interrogatory No. 16,

21      Requests for Admission Nos. 1 & 11-13);

22  • White Castle's online monetization of its Facebook site (Interrogatory

23      Nos. 7, 8, and 14; Requests for Admission Nos. 15-21);

24  • White Castle's knowledge of where its Facebook fans are

25      geographically located (Interrogatory Nos. 9-11);

---

26  [2] JibJab hand served its first sets of written discovery, along with a 30(b)(6)

27  deposition notice, to White Castle's counsel on July 3, 2013.  (Hagen Decl. Ex. 10.) White Castle's responses and objections were therefore due on August 2. Fed. R.

28  Civ. P. 33(a)(2); 34(2)(a); 36(a)(3).  White Castle did not serve responses until August 5, 2013.  (Hagen Decl. Exs. 4, 11, & 12.)

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1       •  the dates of engagement of White Castle's advertising agencies related

2         to the infringing campaign (Interrogatory No. 5); and

3       •  identification of individuals at these advertising agencies whom White

4         Castle directed and authorized to work on the infringing campaign

5         (Interrogatory No. 5).

6  (*See* Hagen Decl. Ex. 11 (Def.'s RFA Resps.), Ex. 4 (Def.'s Interrog. Resps.).)

7  Now that Magistrate Judge McDermott has directed White Castle to drop its

8  objections, JibJab expects that White Castle's discovery responses will only serve

9  to bolster the case for exercising jurisdiction over White Castle. But even without

10  it, there is enough evidence to establish conclusively that White Castle is subject to

11  personal jurisdiction.

12     **E.**     **Sufficient evidence confirms that White Castle knew or should**

13               **have known of JibJab, its trademark, and its location in**

14               **California.**

15         **1.**     **Zimmerman Advertising documents**

16     On August 15, 2013, Zimmerman produced documents in response to

17  JibJab's subpoena. Although incomplete, this production confirms that White

18  Castle knew or should have known of JibJab's trademark and location. Among

19  other things, the Zimmerman documents show that the White Castle marketing

20  team was well aware that they were basing the infringing promotions off of JibJab's

21  videos. A marketing plan discussed with Ms. Blashford and Ms. Bartley of White

22  Castle is telling:

23     **Week 2 – Create a Jib Jab Slider Head App** that allows you to make viral videos of Slider Heads. Fun, viral way to engage with the brand with our Millennial, Tech savvy communities. Please see the link

24     below for a number jib jab videos to serve as a style reference. http://sendables.jibjab.com/originals

25  (*Id.* Ex. 1.) Ms. Blashford is White Castle's Director of Marketing and one of the

26  supporting declarants to White Castle's Renewed Motion to Dismiss. (Blashford

27  Decl.) Ms. Bartley is Vice President of White Castle and, although not a declarant

28  this time, was a supporting declarant to White Castle's initial Motion to Dismiss.

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

1   (Kelly-Bartley Decl. (Attach. 2 to Doc. 10).)  The link provided in the marketing

2   plan is indeed a link to JibJab's website, which contains conspicuous branding of

3   JibJab's logo and marks, as well as a notice that "JibJab®" is a "registered

4   trademark[] of JibJab Media Inc.":



Copyright and Privacy

JibJab®, Sendables®, Starring
You® and JokeBox® are
registered trademarks of JibJab
Media Inc. © Copyright 1999–
2012 JibJab Media Inc. All Rights
Reserved.

Legal Notices      Terms of Service
Terms of Sale
Privacy Policy/
Your California Privacy Rights

12  (Hagen Decl. ¶ 3 & Ex. 2.)  This notice was present at all relevant times, including

13  on the day of the aforementioned marketing communication, February 26, 2012.

14  (*Id.*; Spiridellis Decl. ¶ 3.)  The notice also contains a link to "Your California

15  Privacy Rights," which would have been further indication that JibJab was a

16  California business.  (Hagen Decl. Ex. 2.)

17          Once the infringing promotion began, Ms. Blashford instructed Zimmerman

18  to use the term "Jib Jab" more conspicuously to "prompt" traffic."  (*Id.* Ex. 8.)  As

19  later recounted by Ms. Krueger, a Brand Manager at White Castle who did not

20  submit a supporting declaration to the Renewed Motion to Dismiss, White Castle

21  believed that "using the JibJab name" would "'amp up' our marketing of this video

22  as we were not getting much response."  (*Id.* Ex. 9.)

23          **2.      @WhiteCastle's April 19, 2012 Tweet to @JibJab**

24          In response to White Castle's direction, Zimmerman soon began promoting

25  the videos widely as "JibJab" videos.  One way White Castle did this was by using

26  its Twitter account, @WhiteCastle, to draw traffic to a link to the infringing videos,

27  and including JibJab's Twitter handle, @JibJab:

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES



(Spiridellis Decl. Ex. 1.)  Assuming someone on the White Castle/Zimmerman team clicked on or went to @JibJab, which assuredly happened, they would have seen a profile mentioning the company "JibJab Media Inc." with a website at "jibjab.com" and a physical location at "Venice, CA":



# JibJab Media Inc.

JibJab
eCards, funny animations and political satire
Venice, CA   http://www.jibjab.com

(*Id.* ¶ 5 & Exs. 2 & 3.)

### 3.     Ms. Blashford's "jibjab" searches

Ms. Blashford claims that in 2011 she ran search engine searches for the term "jibjab" but came across nothing that suggested this term was a trademark. (Blashford Decl. ¶ 5.)  This is implausible.  Today, a search of "jibjab" on google.com and bing.com (*i.e.*, the two most popular search engines) results in hits where (i) the trademark-referenced "JibJab®" name appears first with a link to jibjab.com, (ii) the first page of results consists entirely of links or references to JibJab and jibjab.com, and (iii) a reference to the fact that JibJab is based in "Venice, California" is visible without having to scroll down or click further. (Hagen Decl. ¶ 15 & Exs. 13-15.)  Although White Castle presumably has access to Ms. Blashford's electronically-stored information, White Castle has not shown that the search engine results performed by Ms. Blashford produced anything other than the foregoing.  And there is no reason to suspect that the results would have been materially different in 2011.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Ms. Blashford also claims that she "located several cartoon-like political

2    videos" when searching the term "jibjab." (Blashford Decl. ¶ 5.)  There is no

3    reason to believe that the several videos Ms. Blashford viewed came from any

4    source other than JibJab.   JibJab's "cartoon-like political videos" are a large reason

5    for JibJab's fame and are likely the first and only videos that come up in a search

6    engine search. (Spiridellis Decl. Ex. 4; Hagen Decl. ¶ 15 & Exs. 13-15.)  And

7    White Castle has not identified any other possible source. Moreover, with all the

8    conspicuous "JibJab®" logos and branding and intellectual property notices on

9    JibJab's cartoon-like political videos, it is inconceivable that the Director of

10   Marketing for a large company like White Castle could view these videos and not

11   recognize that another company might claim rights to the name "JibJab."

12       **4.    New evidence of online monetization.**

13       Zimmerman and White Castle laid out their goals for the promotion in a

14   series of marketing planning documents.  White Castle's top Facebook strategic

15   priority was, not surprisingly, fan growth through "likes" of the White Castle

16   Facebook fan page. (Hagen Decl. Ex. 16.)  This was to be achieved, in part,

17   through promotion of the ersatz "Jib Jab" videos to draw traffic.  (*Id.*)  As such, the

18   particular promotion at issue here was not just about promoting White Castle's

19   "chicken rings," it was also about building a larger Facebook fan community that

20   could be used for direct marketing purposes later.

21       Indeed, even with the ad campaign at issue, White Castle promoted traffic to

22   its Facebook page without ever mentioning its "chicken rings" product.  That is true

23   for the April 19, 2012 Twitter message. (Spiridellis Decl. Ex. 1.)  And it is also

24   true for the targeted Facebook banner ads, which appeared on the home pages of

25   Facebook users:

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

(*Id.* Ex. 5.)  Upon information and belief, to be confirmed through discovery, this Facebook banner ad was set up so that users would have to "like" White Castle's Facebook page before going to the promotional page.

At the November 5, 2012 hearing on White Castle's first Motion to Dismiss for Lack of Personal Jurisdiction, the issue of whether White Castle used its Facebook page for online monetization was unknown.  But it is evident now that White Castle is in fact using its Facebook fan page to sell products and services directly to its Facebook fans, including DVDs, nationwide delivery of slider hamburgers, and personalized gift items.  (Hagen Decl. Exs. 17-19.)

## III.   ARGUMENT

### A.   White Castle's renewed motion to dismiss should be stricken for failure to meet and confer under Local Rule 7-3.

White Castle filed this motion without any effort to meet and confer, as required under Local Rule 7-3.  (Hagen Decl. ¶ 2.)  In its Notice for its Renewed Motion to Dismiss, White Castle claims that it complied with Local Rule 7-3 based on a conference that took place one year ago, in August of 2012.  But that conference was for a separate motion and did not address the supposed new "evidence" raised in White Castle's *Renewed* Motion to Dismiss.  A meet and confer would not necessarily have been futile, as White Castle will argue.  Rather than springing four incomplete and inaccurate declarations on JibJab in a surprise motion, counsel first could have had a discussion on what evidence might quickly demonstrate that White Castle had knowledge of JibJab, its trademark, and its location in California.  Reasonable counsel could have marshaled the facts, which

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1   undermine and refute the proffered declarations, and then avoided filing what has
2   been a time-wasting exercise.  Unfortunately, that discussion among counsel never
3   happened.

4   **B.**      **White Castle's declarations are premature, incomplete,**
5           **misleading, and do not rebut the Court's finding that the exercise**
6           **of jurisdiction is proper.**

7       White Castle's declarations do not rebut the Court's basis for exercising
8   jurisdiction in this case.  *First*, discovery is still in its early stages.  The Court only
9   contemplated a renewed motion to dismiss "after appropriate discovery" and "at a
10  later stage of the proceedings."  (5/14/2013 Order at 16, 17.)  White Castle's
11  renewed motion is therefore premature.

12      *Second*, the declarations do not adequately represent White Castle's
13  corporate knowledge of what it "knew or should have known" about JibJab and its
14  mark under the *Washington Shoe* standard.  Contrary to Ms. Blashford's statement
15  that the four declarants were the only persons at White Castle who were involved in
16  selecting, implementing, and approving the infringing promotion, subsequent
17  discovery has identified at least six others at White Castle who were involved in
18  this promotion and are likely to have relevant information about White Castle's
19  knowledge of JibJab.  In addition, White Castle has offered no declaration or
20  deposition of any personnel from its agents Zimmerman and Northlich who were
21  involved in creating and implementing the promotion under White Castle's
22  authority and direction.  "For purposes of personal jurisdiction, the actions of an
23  agent are attributable to the principal."  *See Myers v. Bennett Law Offices*, 238 F.3d
24  1068, 1073 (9th Cir. 2001) (quoting *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.
25  1990).  White Castle's proffered record is therefore incomplete.

26      *Third*, as set forth in part II above, White Castle's declarations contain
27  statements that are demonstrably untrue or implausible:
28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

- White Castle, not Northlich, was responsible for trademark clearances. (*Compare* Blashford Decl. ¶¶ 8, 10; Zvonek Decl. ¶ 8; Zuehlke Decl. ¶ 7; Clement Decl. ¶ 7; *with* Hagen Decl. Ex. 6, Northlich-White Castle Agm. § XI.B.)

- There were far more personnel – at White Castle and its agencies – involved with the infringing promotion than just the four who supplied declarations. (*Compare* Blashford Decl. ¶ 3; *with* Hagen Decl. Exs. 1, 5, 8-9 (White Castle-Zimmerman email communications); Ex. 4 (Def.'s Resp. to Interrog. No. 3).)

- Ms. Blashford's assertion that she did not come across anything suggesting "JibJab" was a trademark when she searched "jibjab" online and viewed "several cartoon-like political videos" is implausible. (*Compare* Blashford Decl. ¶ 5, *with* Hagen Decl. ¶ 15.)[3]

- Ms. Blashford believes she has never visited jibjab.com, but a February 26, 2012 email to her produced by Zimmerman specifically directed her to a link to jibjab.com. (*Compare* Blashford Decl. ¶ 6.a, *with* Hagen Decl. Ex. 1.)

Thus, White Castle's proffered declarations do not provide a basis for overturning the Court's exercise of jurisdiction in this case.

**C.    Despite only limited discovery, evidence already establishes conclusively that White Castle knew or should have known JibJab owned the JIBJAB® mark and was a California-based company.**

Like in its original motion to dismiss, White Castle's renewed motion only raises the "express aiming" element of the specific jurisdiction analysis and "does not dispute [the] other prongs for purposes of this Motion." (Def.'s Br. (Doc. 20-1) at 1-2 & n.1; *see* 5/14/2013 Order at 8 ("The parties' only dispute concerns the

---

[3] *See Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F. 3d 259, 265 (9th Cir. 1996) (acknowledging willful blindness satisfies the knowledge requirement in trademark cases).

JIBJAB'S OPPOSITION TO WHITE CASTLE'S
RENEWED MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

second element of this test – whether White Castle expressly aimed its allegedly infringing promotional materials toward California.").)  In deciding this issue, the Court's May 14, 2013 Order correctly applied *Washington Shoe* in denying White Castle's original motion to dismiss.

The analytical framework in *Washington Shoe* still applies.  In cases such as this where the plaintiff, a forum resident, alleges intentional infringement of its intellectual property, the plaintiff need only demonstrate that the defendant "knew or should have known" that the plaintiff was a forum resident.  *Washington Shoe*, 704 F.3d at 678.  A defendant's possession of goods containing registration notices of plaintiff's intellectual property rights satisfies the actual or constructive knowledge requirement where the defendant knows or should know of those registration notices.  Indeed, in *Washington Shoe*, among the evidence the Ninth Circuit credited with establishing such knowledge was the defendant's receipt of catalogs and brochures that showed the copyrighted boots at issue.  *Id.* at 675-79; *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) (finding "express aiming" where out-of-state defendant knew – "either actually or constructively" – about its infringing website's viewer base in the forum state); *Warner Bros. Home Entm't v. Jimenez*, No. CV 12-9160 FMO (JEMx), 2013 U.S. Dist. LEXIS 97139, at *5-*6 (C.D. Cal. July 8, 2013) (applying *Washington Shoe* and finding "express aiming" prong satisfied where out-of-state defendant copied plaintiff's packaging and such packaging contained an express notice of copyright and plaintiff's address in Burbank, California).

There can be no doubt that White Castle "knew or should have known" JibJab was the owner of the JIBJAB® trademark.  White Castle's actual or constructive knowledge is established by (i) its explicit use of JibJab's website as a "style reference" in execution documents (Hagen Decl. Ex. 1); (ii) the fact that JibJab's website pages, including the one linked in White Castle's marketing communications, contained conspicuous branding and trademark registration

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

notices, as well as a link to "<u>Your California Privacy Rights</u>" (*id.* ¶ 3 & Ex. 2);
(iii) @WhiteCastle's Twitter messaging to @JibJab during the infringing social
media campaign, including the fact that the profile page for @JibJab stated at the
time that "JibJab Media Inc." is a company in "Venice, CA" with the website
"jibjab.com" (Spiridellis Decl. ¶ 5 & Exs. 2-3); (iv) the admission by White
Castle's Director of Marketing that she ran searches of "jibjab" in 2011 and viewed
"several cartoon-like political videos," where it is implausible that any such search
results and videos would have been from a source other than JibJab (*compare*
Blashford Decl. ¶ 5, *with* Hagen Decl. ¶ 15); and (v) White Castle's instruction to
its advertising agency Zimmerman to insert a reference to "Jib Jab" in the
infringing promotion so as to "prompt" increased traffic and "amp up" marketing
(Hagen Decl. Exs. 8 & 9).

     Notably, this evidence was obtained despite White Castle's ongoing
withholding of discovery and attempts to severely restrict discovery.  But even this
limited evidence establishes once and for all that White Castle knew or should have
known JibJab owned the JIBJAB® mark and was a California-based company.

    **D.**       **There are other grounds for exercising jurisdiction over White
Castle.**

        **1.**       **White Castle used the "Jib Jab" mark to drive "likes" to its
Facebook page and then used its Facebook page to sell goods
online directly to those same Facebook fans.**

     When the Court heard White Castle's first Motion to Dismiss for Lack of
Personal Jurisdiction, it was unclear whether White Castle was using its Facebook
page to sell goods or services.  The assumption in the Court's May 14, 2013 Order
was that White Castle was not engaging in such online monetization.  That
assumption no longer applies.  Indeed, White Castle is using its Facebook fan page
to sell products and services directly to its Facebook fans, including DVDs,

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

1  nationwide delivery of slider hamburgers, and personalized gift items.  (Hagen

2  Decl. Exs. 17-19.)

3      White Castle's use of a Facebook fan audience that grew significantly during

4  the falsely co-branded "White Castle Jib Jab" promotion further supports exercising

5  jurisdiction in this case under *Mavrix*, 647 F.3d 1218.[4]  In *Mavrix*, the Ninth Circuit

6  reversed a dismissal for lack of personal jurisdiction, ruling that an Ohio-based

7  website that posted plaintiff's copyrighted photos was subject to specific

8  jurisdiction in California because those photos were used to draw traffic to the

9  website, and from that traffic, the defendant derived revenue from third party

10  advertisers.  *Id.* at 1230.  Similarly, here, White Castle used JibJab's mark to grow

11  its Facebook fan community, including its California-based fan community, and

12  White Castle is using that expanded community to sell goods and services to those

13  fans.  It follows under *Mavrix* that White Castle should be subject to personal

14  jurisdiction.

15      **2.    The Court has discretion under the Ninth Circuit's "flexible**

16  **approach" to exercise jurisdiction where considerations of**

17  **reasonableness dictate.**

18      The Ninth Circuit takes a "flexible approach" to personal jurisdiction, such

19  that, on a case-by-case basis, jurisdiction "can be established with a lesser showing

20  of minimum contacts where considerations of reasonableness dictate."  *The Wine*

21  *Group LLC v. Levitation Mgmt., LLC*, No. Civ. 2:11-1704 WBS JFM, 2011 U.S.

22  Dist. LEXIS, at *30 (E.D. Cal. Oct. 5, 2011) (citing *Ochoa v. J.B. Martin & Sons*

23  *Farms, Inc.*, 287 F.3d 1182, 1189 n.2 (9th Cir. 2002).  "Under this analysis, there

24  will be cases in which the defendant has not purposefully directed its activities at

25  the forum state, but has created sufficient contacts to allow the state to exercise

26

27  [4] As set forth in Eric W. Hagen's Declaration in Support of JibJab's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, at ¶ 3, filed October 15, 2012 (Attach. 1 to Doc. 12), during the

28  final week alone of the infringing promotion, the number of White Castle's Facebook fans grew by approximately 50,000.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

personal jurisdiction if such exercise is sufficiently reasonable." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir. 1986).  The *Wine Group* court observed that defendant's online courting of a national audience, including its decision not to exclude California from its advertising, was a basis for finding that "[i]t does not seem unreasonable to hold them nationally accountable." *Id.* at *30-32.  Here, too, the Court would be justified in applying this flexibility to exercise jurisdiction because such exercise is sufficiently reasonable.

**E.     The Court should direct the Clerk to enter a default or otherwise order White Castle to answer immediately.**

White Castle should not be allowed to proceed in this case without filing a proper responsive pleading, which it failed to do by the May 28, 2013 deadline. White Castle's Renewed Motion to Dismiss is not a substitute for answering the complaint, as required by Rule 12(a)(4)(A).  *See* Fed. R. Civ. P. 12(a)(4)(A) ("[I]f the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action.").  The Court's May 14 Order denying White Castle's initial motion to dismiss did not alter this Rule 12(a)(4)(A) deadline.

Because White Castle failed to answer or otherwise timely respond, JibJab filed a request for entry of default on June 10, 2013 (Doc. 22).  The next day, the Clerk notified JibJab that the requested relief could not be entered absent direction from the Court because White Castle, in the meantime, had filed a "Renewed Motion to Dismiss" on June 3, 2013 (Doc. 20) – one week after the answer deadline.  If JibJab had filed its request for entry of default after May 28, 2013, and before 8:30 p.m. on June 3, 2013 (*i.e.*, the filing time of White Castle's renewed motion), the Clerk could have entered a default as a matter of course.  For the reasons stated herein, White Castle's Renewed Motion to Dismiss should be stricken and should not be an impediment to the Clerk of Court entering a default against White Castle for its failure to timely answer.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Alternatively, the Court should order White Castle to answer JibJab's
2 complaint immediately.  White Castle has had JibJab's complaint for 16 months.
3 Its answer is already 3 months overdue.  It should be prepared to file an answer
4 within a few short days.  Requiring a prompt answer and service of initial
5 disclosures is imperative because the parties have a December 6, 2013 fact
6 discovery cutoff and JibJab should not be further prejudiced by White Castle's
7 delay.

8  **IV.    CONCLUSION**

9    For the reasons stated above, the Court should deny White Castle's Renewed
10 Motion to Dismiss for Lack of Personal Jurisdiction.

11    The Court also should direct the Clerk of Court to enter a default against
12 White Castle, as requested by JibJab on June 10, 2013 (Doc. 22), because White
13 Castle failed to answer or otherwise respond to JibJab's complaint by the May 28,
14 2014 deadline.  Alternatively, the Court should order White Castle to answer
15 JibJab's complaint and provide initial disclosures pursuant to Rule 26(a)
16 immediately, so that the parties can complete discovery within the time allotted
17 under the Order Setting Case Management Dates (Doc. 24).

18 Dated:    August 19, 2013          McDERMOTT WILL & EMERY LLP

19

20                                   By:  /s/ Eric W. Hagen
21                                      ERIC W. HAGEN

22                                   Attorneys for Plaintiff
                                     JIBJAB MEDIA INC.
23

24 DM_US 44392051-1.080322.0060

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles